IN RE ROCHE

No. A-66.   Decided July 23, 1980

MR. JUSTICE BRENNAN, Circuit Justice.

This is an application for a stay of enforcement, pending a petition for a writ of certiorari, of the July 10, 1980, order of a single justice of the Massachusetts Supreme Judicial Court, adjudicating applicant in civil contempt for refusal to disclose the identities of news sources, and of the July 16, 1980, order of the Supreme Judicial Court affirming the adjudication of contempt.

Applicant Roche is a reporter who participated in a television news team's investigation of a number of state judges. On January 11, 1979, applicant broadcasted a television news story about alleged misconduct by respondent, a State District Court Justice.   The report prompted an investigation by the Massachusetts Commission on Judicial Conduct that culminated in the filing of formal proceedings.

In anticipation of disciplinary hearings, the Commission furnished the state judge with the names of 65 witnesses whom the Commission proposed to call.   Among these was applicant.   On May 16, the Commission issued an order allowing the judge to depose 11 of the 65 witnesses, including applicant. At his deposition, applicant testified about his own observa-

tions in the course of his investigation, and indicated a willingness to reveal the content of interviews with any individual who could be independently identified as one of applicant's sources. Accordingly, applicant did communicate to respondent judge the substance of his interviews with those persons who publicly appeared on the television news broadcast. Applicant also conceded that names of all the people whom he had previously interviewed were contained in the list of witnesses for the disciplinary hearings. Citing a newsman's "privilege," however, applicant refused to specify or discuss those on the list whom he had interviewed in confidence, unless they had first been identified by other means.

In the course of some procedural skirmishing, applicant Roche moved for a protective order from Justice Kaplan of the Supreme Judicial Court based upon this asserted newsman's privilege, and respondent judge sought an order compelling applicant to identify his sources. Justice Kaplan referred the issue to the Conduct Commission, which ruled that the claim of newsman's privilege under the First Amendment was insubstantial, and that applicant should divulge the identities of his sources so that the respondent judge could prepare to impeach or correct the testimony of those sources during the hearings. Upon renewal of the motions to him, Justice Kaplan concurred in the Commission's view. He reasoned that inasmuch as the applicant had consented to disclose the substance of interviews with sources if otherwise identified—as through the process of deposing each of the 65 hearing witnesses—the net effect of applicant's claim of privilege was simply to compel the respondent judge to sift through a series of deponents to obtain information directly available from the reporter. Justice Kaplan concluded that "no significant principle [was] to be served by the suggested approach," Applicant's Ex. B., p. 4, and, on July 7, ordered Roche to respond to questions about unidentified sources.

Applicant subsequently appeared at a deposition but once again declined to identify his undisclosed sources. On July

1314

10, Justice Kaplan adjudicated him in civil contempt, and stayed execution of the contempt order. The adjudication of contempt was affirmed by the full Supreme Judicial Court on July 16, and the next day Justice Kaplan ordered that the stay of civil contempt sanctions be vacated on July 21. Upon application to me as Circuit Justice, I entered an interim order continuing the stay pending filing of a response and further order of the Circuit Justice or this Court.

Only recently, I have had occasion to review the principles that guide a Circuit Justice's determination of stay applications. *Rostker* v. *Goldberg, ante,* p. 1306. Generally, a stay will issue upon a four-part showing that (1) there is a "reasonable probability" that four Justices will find the issue sufficiently substantial to grant certiorari; (2) there is a "fair prospect that a majority of the Court will conclude that the decision below was erroneous," *ante,* at 1308; *Times-Picayune Publishing Corp.* v. *Schulingkamp,* 419 U. S. 1301, 1305 (1974) (POWELL, J., in chambers);[1] (3) irreparable harm to applicant is likely to result if the request for a stay is denied; and (4) the "balance of equities"—to the parties and to the public—favors the issuance of a stay.

Predicting the probability of a grant of certiorari and of a reversal of the decision below in this case is an uncertain undertaking. The question of a newsman's privilege to conceal sources is not a matter of first impression. *Branzburg* v. *Hayes,* 408 U. S. 665 (1972), held that the First Amendment does not provide newsmen with an absolute or qualified testimonial privilege to be free of relevant questioning about

---

[1] In *Rostker,* my evaluation of the "fair prospect" for reversal of the decision below was conducted in the context of a direct appeal. Where review is sought by the more discretionary avenue of writ of certiorari, however, the consideration of prospects for reversal dovetails, to a greater extent, with the prediction that four Justices will vote to hear the case. Thus, it may be that the "fair prospect"-of-reversal criterion has less independent significance in a stay determination when review will be sought by way of certiorari.

sources by a grand jury.   More recently, two of my Brethren found the prospects for review by the full Court insufficient to warrant staying contempt proceedings against a New York Times reporter for his failure to submit documents to *in camera* judicial inspection in compliance with a subpoena for those documents by the defendant in a murder trial.   *New York Times Co.* v. *Jascalevich,* 439 U. S. 1317 (1978) (WHITE, J., in chambers); *New York Times Co.* v. *Jascalevich,* 439 U. S. 1331 (1978) (MARSHALL, J., in chambers).

At the same time, there is support for the proposition that the First Amendment interposes a threshold barrier to the subpoenaing of confidential information and work product from a newsgatherer.   Four dissenting Justices in *Branzburg* discerned at least some protection in the First Amendment for confidences garnered during the course of newsgathering. 408 U. S., at 721 (Douglas, J., dissenting); *id.,* at 744–747 (STEWART, J., dissenting, joined by BRENNAN and MARSHALL, JJ.).   And MR. JUSTICE POWELL, who joined the Court in *Branzburg,* wrote separately to emphasize that requests for reporter's documents should be carefully weighed with due deference to the "vital constitutional and societal interests" at stake.   *Id.,* at 710.   Consequently, I do not believe that the Court has foreclosed news reporters from resisting a subpoena on First Amendment grounds.[2]

[2] The opinions in chambers denying the requested stay in *New York Times Co.* v. *Jascalevich* on the basis of the unlikelihood of review turned not upon the general meritlessness of a newsman's privilege, but more particularly upon the improbability that such a privilege would be applied to preclude *in camera* inspection of papers by a judge.   439 U. S., at 1322–1323 (WHITE, J.);   439 U. S., at 1337 (MARSHALL, J.); see *United States* v. *Nixon,* 418 U. S. 683 (1974).

Respondent also suggests that *Herbert* v. *Lando,* 441 U. S. 153, 167–169 (1979), contradicts any assertion of a newsman's privilege.   That decision, however, dealt with discovery of editorial processes when the collective state of mind of a news organization was directly in issue in a suit against that organization.

Assuming that there is at least a limited First Amendment right to resist intrusion into newsgatherers' confidences, this case presents an apt occasion for its invocation. As determined by Justice Kaplan below, respondent judge could have obtained the information sought from the applicant by other adequate—albeit somewhat roundabout—methods. Thus, this case does not present a question of necessity for the confidences subpoenaed. What is ranged against the asserted First Amendment interests of the applicant is essentially respondent's convenience. If I am correct, therefore, that a majority of the Court recognizes at least some degree of constitutional protection for newsgatherers' confidences, it is reasonably probable that four of my Brothers will vote to grant certiorari, and there is a fair prospect that the Court will reverse the decision below.[3]

Turning to consider the irreparable harm of the applicant in the absence of a stay, and to weigh the "balance of equities," I conclude that these favor the continuation of the stay below pending a petition for writ of certiorari and disposition thereof. Without such a stay, applicant must either surrender his secrets (and moot his claim of right to protect them) or face commitment to jail. If the stay remains in force, on the other hand, the judge subject to the disciplinary inquiry can obtain the information he seeks by deposing the hearing witnesses. The hardship that this would impose— although not negligible—does not outweigh the unpalatable choice that civil contempt would impose upon the applicant. Finally. even respondent's burden of going forward without the desired cooperation of the applicant can be alleviated by an agreement with the Commission to continue disciplinary

---

[3] Civil contempt proceedings such as these—against a nonparty and colored by First Amendment overtones—are appealable for purposes of our review. *New York Times Co. v Jascalevich, supra,* at 1318–1319 (WHITE, J., in chambers). The judgment sought to be stayed has been affirmed by the Supreme Judicial Court of Massachusetts and is final.

proceedings until resolution of applicant's petition for a writ of certiorari.[4]

Having decided that a stay pending a timely petition for writ of certiorari and disposition thereof is warranted,[5] I have today entered an order continuing my stay of enforcement of the order of the single justice of July 10, 1980, adjudicating applicant Roche in civil contempt.

---

[4] Respondent judge suggests that "the ends of justice might . . . be served by the Circuit Justice ordering a stay of the formal proceedings against the Respondent." Memorandum in Opposition 7. Should the Commission and respondent judge be unable to agree upon a continuance, respondent judge is, of course, free to apply for a stay of the proceedings in accordance with proper procedures.

[5] For the reasons stated in this opinion, I believe that applicant's showing is sufficient to support my order of a stay notwithstanding the denial of an indefinite stay below. Cf. *Rostker* v. *Goldberg, ante,* p. 1306.