**In re Coordinated Pretrial Proceedings in PETROLEUM PRODUCTS ANTITRUST LITIGATION.**

**Appeal of McGRAW–HILL, INC., Witness-Appellant,**

v.

**The STATES OF ARIZONA, CALIFORNIA, FLORIDA, OREGON AND WASHINGTON, Plaintiffs-Appellees.**

**No. 1139, Docket 82–7247.**

United States Court of Appeals, Second Circuit.

Argued May 6, 1982.

Decided May 18, 1982.

William F. Sondericker, New York City (Jeffery H. Sheetz, Olwine, Connelly, Chase, O'Donnell & Weyher, Robert N. Landes, Gen. Counsel, Barbara E. Schlain and Kenneth M. Vittor, Asst. Gen. Counsel, New York City, of counsel), for witness-appellant McGraw-Hill, Inc.

Stephen L. Dunne, Sp. Asst. Atty. Gen., Del Mar, Cal. (Jim Smith, Bill L. Bryant, Jr., Jerome W. Hoffman, David G. Guest, Tallahassee, Fla., of counsel), for plaintiffs-appellees The States of Ariz., Cal., Fla., Or. and Wash.

Jack C. Landau, Judy D. Lynch, Washington, D. C., for amicus curiae The Reporters Committee for Freedom of the Press.

Robert A. Saltzstein, Stephen M. Feldman, Wyatt, Saltzstein, Lipsen & Hamberger, Washington, D. C., for amicus curiae American Business Press, Inc.

Stephen H. Gross, Duncan Noble Darrow, Victor A. Kovner, Harriette K. Dorsen, O'Sullivan, Wolfe, Karabell & Graev, Lankenau, Kovner & Bickford, New York City, for amicus curiae Magazine Publishers Association, Inc.

Before FRIENDLY, KAUFMAN and PIERCE, Circuit Judges.

PER CURIAM:

This is an appeal from Judge William P. Gray's order[1] holding McGraw-Hill, Inc. in civil contempt for refusing to produce a document in the possession of Ernest McClelland, an employee of McGraw-Hill, containing certain names of confidential sources. The document was requested pursuant to a subpoena *duces tecum* served on McGraw-Hill as a non-party witness by the States of Arizona, California, Florida, Oregon and Washington ("States") in connection with a multidistrict litigation brought against seventeen oil companies alleging violations of the Sherman Act, 15 U.S.C. § 1. Because the law regarding the qualified privilege of reporters as it applies in this case is relatively clear, there is no need for us to engage in an elaborate exegesis at this time. Since we believe that under controlling case law the record before us does not support a requirement that McGraw-Hill reveal the names of confidential sources, we vacate and remand the case to the district court.

A brief review of the underlying litigation will place our analysis of Judge Gray's order in context and will demonstrate the inadequacy of the States' showing of a need for disclosure. The States filed suits against seventeen oil companies seeking treble damages for numerous violations of

1. Judge Gray entered the order while sitting in the Southern District of New York pursuant to 28 U.S.C. § 1407(b). Appeal of that order is properly before this Court. *In re Corrugated Container Antitrust Litigation*, 644 F.2d 70, 74 n.6 (2d Cir. 1981).

the antitrust laws.[2] The allegation relevant to this appeal is their contention that the oil companies engaged in a conspiracy to fix the prices of refined oil products, especially retail gasoline. Believing that the conspiracy may have been facilitated by communications to and from trade publications, the States on May 1, 1980 caused a subpoena *duces tecum* to be served upon Platt's Oilgram Price Service, a division of McGraw-Hill, Inc. The Service published *Platt's Oilgram Price Report*[3] ("*Platt's*"). The subpoena required production of any document referring to communications concerning petroleum products prices for the period 1970–73.[4] McGraw-Hill did not fully comply with the subpoena. Invoking the privilege from disclosure afforded reporters, McGraw-Hill declined to produce certain documents which contained the names of confidential sources of information.[5]

Judge Gray held a hearing on December 3, 1981 and concluded that the interest of the States in the names of the confidential sources outweighed the First Amendment right of McGraw-Hill.[6] Accordingly, he ordered that the names be disclosed.[7] When McGraw-Hill persisted in its refusal to reveal the names maintained by *Platt's* editor Ernest McClelland, Judge Gray imposed a fine of $100 per day on McGraw-Hill for civil contempt.[8] This appeal followed.

The law in this Circuit is clear that to protect the important interests of reporters and the public in preserving the confidentiality of journalists' sources, disclosure may be ordered only upon a clear and specific showing that the information is: highly material and relevant, necessary or critical to the maintenance of the claim, and not obtainable from other available sources. *Baker v. F & F Investment*, 470 F.2d 778, 783–85 (2d Cir. 1972), *cert. denied*, 411 U.S. 966, 93 S.Ct. 2147, 36 L.Ed.2d 686 (1973). *Accord, Zerilli v. Smith*, 656 F.2d 705, 713–15 (D.C.Cir.1981); *Silkwood v. Kerr-McGee Corp.*, 563 F.2d 433, 438 (10th

---

2. The complaints in this action were filed by the States individually between July 1973 and February 1977. In August 1976, the Judicial Panel on Multidistrict Litigation transferred the then pending cases to the Central District of California for coordinated pretrial proceedings. *In re Petroleum Products Antitrust Litigation*, 419 F.Supp. 712 (J.P.M.L.1976). The states are suing in their proprietary capacity, as class representatives of consumers who purchased gasoline at retail, as class representatives of political entities that purchased gasoline and other refined petroleum products, and on behalf of their citizens as *parens patriae*.

3. *Platt's* is a news service that reports news of sales, prices, current events, marketing developments and economic trends in the petroleum industry. It also operates a Telex service reporting on developments in the oil industry.

4. Specifically, the subpoena called for production of any document showing, for the years 1970–1973, the names of any:
  (b) persons with whom *you* communicated by any means for the purpose of obtaining *petroleum products price information*;
  (c) persons who communicated with *you* by any means for the purpose of furnishing to *you petroleum products price information*;
  (d) persons who communicated with *you* by telephone, teletype or other electronic means for the purpose of obtaining from you *petroleum products price information*;

  (e) persons with whom *you* communicated by telephone, teletype or other electronic means for the purpose of furnishing to them *petroleum products price information*; and
  (f) persons whom *you* reasonably believed had knowledge of *petroleum products price information*, and whose addresses or telephone numbers were kept by *you*.

5. McGraw-Hill withheld a list of four names possessed by J. Bruce Chalfant, an editor-reporter of *Platt's* who left McGraw-Hill's employ in February 1981, and a list of seven names possessed by *Platt's* editor-reporter Ernest McClelland.

6. Although Judge Gray did not file a written opinion explaining his decision, a transcript of the December 3, 1981 hearing permits us to understand his reasoning.

7. At the conclusion of the hearing, when personally faced with contempt, Chalfant chose to disclose to the States the four names he had withheld. Two of the names on McClelland's list were revealed to the States because McGraw-Hill determined that they were not confidential. Thus, at this time, the case involves a dispute only over the names of five confidential sources of information.

8. After determining that McGraw-Hill was the real party in interest, Judge Gray imposed the order of contempt upon McGraw-Hill rather than on its employee McClelland.

Cir. 1977). Upon careful review of the record, we are convinced that there was an insufficient basis for ordering identification of the confidential sources.

In *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), the Supreme Court held that reporters do not possess a blanket exemption from testifying before a grand jury. In his concurring opinion, however, Justice Powell [9] emphasized the limited nature of the Court's holding, and stated that:

> if the newsman is called upon to give information bearing only a remote and tenuous relationship to the subject of the investigation, or if he has some other reason to believe that his testimony implicates confidential source relationships without a legitimate need of law enforcement, he will have access to the court on a motion to quash and an appropriate protective order may be entered.

*Id.* at 710, 92 S.Ct. at 2671. The names of the confidential sources sought in this instance bear at most a tenuous and speculative relationship to their antitrust claims.

The States argue that oil companies may have transmitted price information among themselves by releasing that data to reporters of *Platt's.* We find no such allegation, however, in their complaints. Rather, the pleadings suggest that the purportedly unlawful communications were directly accomplished through secret telephone lines, unlogged calls and surreptitious meetings. This critical omission is compounded by the complete failure of the States to present any evidence indicating that the involvement of *Platt's* in fact occurred. Judge Gray acknowledged the absence of proof that the sources possessed relevant information: "Now I hasten to add I certainly don't know whether any such exchanges took place. I have no information on that whatever." The necessity for confidentiality, essential to fulfillment of the pivotal function of reporters to collect information for public dissemination, cannot be overcome simply by suggesting—with no basis to support the assertion—that the reporter may unknowingly have been used by those sources in their illegal activities.[10]

Disclosure was also improperly ordered because the States failed to carry their burden of first seeking the information elsewhere. In *Branzburg v. Hayes, supra,* Justice White, writing for the Court, noted that the Attorney General of the United States had fashioned a set of rules for federal officials in connection with subpoenaing members of the press to testify before grand juries. *Id.* at 706–07, 92 S.Ct. at 2669. The Guidelines for Subpoenas to the News Media, expressed in Department of Justice Memo. No. 692 (Sept. 2, 1970), contained the admonition that "all reasonable attempts should be made to obtain information from non-press sources before there is any consideration of subpoenaing the press." *Id.* at 707 n.41, 92 S.Ct. at 2669. The court cited these Guidelines with approval. *Id.* at 707, 92 S.Ct. 2669.

In *Baker v. F & F Investment, supra,* we affirmed the district court's refusal to order a journalist to reveal the name of a "blockbuster" whom he had interviewed while preparing a *Saturday Evening Post* article on housing discrimination because the plaintiffs had not exhausted other available sources of the information. Similarly, in this case, the States have failed to explore any alternative means of discovering whether the oil companies used *Platt's* as part of their purported price fixing conspiracy. While hundreds of depositions have

---

**9.** Justice Powell cast the deciding vote in *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), and therefore his reservations are particularly important in understanding the decision.

**10.** At the December 3, 1981 hearing, counsel for McGraw-Hill suggested that depositions of the reporters should be taken before disclosure is ordered. Although the States rejected that offer, they did depose Chalfant after he revealed the names of his four confidential sources. At that deposition, it was learned that two of his sources were not even employed by any of the defendant oil companies. A deposition of McClelland may well indicate whether his sources were using him as a part of a price fixing conspiracy by the defendants. The nature of McClelland's possible involvement must certainly be developed prior to assuming that his communications were part of a violation of the antitrust laws. We note that the State of Florida has expressly disavowed any intent to accuse McGraw-Hill of being a co-conspirator.

already been taken, there is no indication that anyone was asked the simple question "Have you ever communicated pricing information to *Platt's?*" Additional depositions may be necessary to uncover whether *Platt's* played any role in the alleged antitrust conspiracy. *See also* note 10, *supra.* This requirement is reasonable when balanced against the strain on the First Amendment which the contempt order imposes.[11] In the process, if the States learn that their theory is correct, they may also identify the actual purveyors of price information, thus obviating the need to inquire of *Platt's.*

The States invite us to disregard these established principles and permit compelled disclosure of confidential sources in the absence of this constitutionally mandated showing simply because the underlying litigation involves the antitrust laws. We decline the invitation to hold violations of the antitrust laws to be *sui generis.* Although it is true that the Sherman Act represents Congress's strong commitment to fostering a competitive marketplace, enactment of a statute cannot defeat a constitutional provision. In *Baker v. F & F Investment, supra,* we recognized the strong public policy embodied in the federal civil rights laws but rejected a similar plea to alter the constitutional test, explaining "[i]t would be inappropriate for a court to pick and choose in such gross fashion between different acts of Congressional legislation, labeling one 'exceedingly important' and another less so, without specific directions from the Legislature." *Id.* at 783. We do not believe that the antitrust laws should receive a preferred position in this context and, accordingly, refuse to depart from the accepted

test expounded in *Baker.* Indeed, this case presents a less compelling argument for disclosure than in *Branzburg v. Hayes, supra,* because we are dealing with a civil action rather than questioning by a grand jury.[12]

Accordingly, we conclude that Judge Gray improperly imposed civil contempt sanctions upon McGraw-Hill in the absence of concrete evidence that the information sought was relevant to the underlying antitrust action and could not be obtained elsewhere. The order is therefore vacated and the case remanded.[13]

---

**11.** Justice Brennan has suggested that the harm caused by requiring the taking of 65 depositions did not "outweigh the unpalatable choice that civil contempt would impose upon the" reporter ordered to disclose the names of his confidential source. *In re Roche,* 448 U.S. 1312, 1316, 101 S.Ct. 4, 6, 65 L.Ed.2d 1103 (1980) (Brennan, J. in chambers). Likewise, the District of Columbia Circuit recently recognized that "an alternative requiring the taking of as many as 60 depositions might be a reasonable prerequisite to compelled disclosure." *Zerilli v. Smith,* 656 F.2d 705, 714 (D.C.Cir. 1981).

**12.** Judge Gray likened the instant case to *Branzburg v. Hayes, supra.* However, in *Baker v. F & F Investment, supra,* 470 F.2d at 784–85, it was this Court's view that *Branzburg* was limited to the grand jury setting: "Manifestly, the Court's concern with the integrity of the grand jury as an investigating arm of the criminal justice system distinguishes *Branzburg* from the case presently before us."

**13.** On remand, the States may, of course, develop the necessary factual record and then reapply to Judge Gray for a new disclosure order.