**Brian KAREM, Petitioner,**

v.

**The Honorable Pat PRIEST, Harlon Copeland, Fred Rodriguez, and Jim Mattox, Respondents.**

**No. SA–90–CA–292.**

United States District Court,
W.D. Texas,
San Antonio Division.

June 19, 1990.

R. Laurence Macon, Paul D. Andrews, Cox & Smith Inc., San Antonio, Tex., for petitioner.

Ricardo J. Navarro, Asst. Criminal Dist. Atty. for Bexar County, San Antonio, Tex., for respondents Copeland & Rodriguez.

Mark Stevens, San Antonio, Tex., for intervenor Henry David Hernandez.

Gerald H. Goldstein, San Antonio, Tex., for intervenor Julian Loredo Hernandez.

## ORDER

H.F. GARCIA, District Judge.

On this date came on for consideration by the Court petitioner's application for writ of habeas corpus filed pursuant to Title 28 U.S.C. Section 2254 seeking to vacate a state court order holding petitioner in civil contempt. Under consideration by the Court are the Findings and Recommendation of the United States Magistrate John W. Primomo as well as the objections thereto. Having made a *de novo* determination with respect to those portions of the Magistrate's Findings and Recommendation to which objections have been made, as required by Title 28 U.S.C. Section 636(b)(1)(C), the Court hereby accepts and approves the Magistrate's primary Finding and Recommendation that petitioner's application for writ of habeas corpus be denied pursuant to *Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). (involving newsman's refusal to answer relevant and material questions asked during a good faith grand jury investigation.)

The Court finds that the Magistrate properly concluded that the First Amendment does not invalidate every incidental burdening of the press that may result from the enforcement of civil or criminal statutes of general applicability. *Branzburg*, 408 U.S. at 681–682, 92 S.Ct. at 2656–57. Further, in a recent unanimous Supreme Court civil opinion cited by the Magistrate in which Justice Brennan compared the case before his Court to *Branzburg*, the Court explicitly restated its own *Branzburg* holding in this way:

> In *Branzburg*, the Court rejected the notion that under the First Amendment a reporter could not be required to appear or to testify as to information obtained in confidence without a special showing that the reporter's testimony was necessary.

*University of Pennsylvania v. E.E.O.C.*, —— U.S. ——, 110 S.Ct. 577, 588, 107 L.Ed.2d 571 (1990). This Court likewise rejects petitioner's notion that a balancing test must be performed before a reporter can be required to appear or to testify regarding confidential information pertinent to a criminal case. Petitioner's application for writ of habeas corpus is therefore DENIED.

## MEMORANDUM AND RECOMMENDATION

JOHN W. PRIMOMO, United States Magistrate.

In this habeas corpus proceeding, brought pursuant to Title 28 U.S.C. Section 2254, petitioner Brian Karem seeks to vacate a state court order holding him in civil contempt. Karem, a reporter for local television station KMOL, was subpoenaed to produce audio and video recordings as well as all written materials which concerned the shooting death of San Antonio Police Officer Gary Williams. Specifically, Karem was ordered to produce "[a]ny written, typed or tape recorded notes ... relating to any conversations allegedly with Henry David Hernandez," one of two brothers charged with capital murder in Officer Williams' death. Karem refused and was found to be in contempt. After exhausting available state court remedies, the instant federal habeas application was filed. An evidentiary hearing was conducted April 5, 1990, which was supplemented with an *in camera* hearing the following day. Having considered the applicable law, the Court is of the opinion the application should be denied.

### The Interview

Officer Williams was shot and killed on March 27, 1989. Two days later Henry David Hernandez and his brother Julian, who were being sought, surrendered to police. Later that day, Karem interviewed Henry Hernandez on the telephone while the latter was incarcerated at the Bexar County Adult Detention Center. In this conversation, Henry Hernandez stated he fired the shot that killed Officer Williams while Julian sat in the policeman's car. Both brothers were subsequently indicted for capital murder.

*Interested Parties and Their Claims*

Karem states that all of the material subject to the subpoena have been produced except for written notes containing the names, addresses and telephone numbers of confidential sources who aided Karem in obtaining the interview. He claims that a reporter has a First Amendment privilege to refuse to disclose the identity of confidential informants. Citing *Miller v. Transamerican Press, Inc.*, 621 F.2d 721, *modified*, 628 F.2d 932 (5th Cir.1980), *cert. denied*, 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 238 (1981), Karem contends this privilege can be overcome only if: (1) the information sought is relevant, (2) the information cannot be obtained by alternate means, and (3) there is a compelling interest in disclosure of the information. Allegedly, none of these elements are present here.

The State of Texas, in its response to Karem's state habeas petition, challenges the application of *Miller*, a civil case, in this criminal context. Relying upon *Branzburg v. Hayes*, 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), the State argues that news reporters are not exempt from the normal duty of answering questions relevant to a criminal investigation. Furthermore, according to the affidavit of Elizabeth H. Taylor, the Bexar County assistant criminal district attorney responsible for the prosecution of the Hernandez brothers, the State has a compelling need to learn the identity of the confidential sources to determine: (1) the full extent of any admissions against interest made by the defendants and the defendants' credibility, (2) whether any relationship existed between defendants and Officer Williams prior to his death, (3) the actual degree of culpability of each defendant, and (4) the existence or extent of state involvement in the interview with Henry David Hernandez. She also says that the information is necessary to comply with the state's continuing obligation to conduct a complete and proper investigation of the charges against defendants, and that no other source of the information exists. Therefore, assuming the applicability of *Miller*, the State argues

it has established the necessary elements to overcome the qualified privilege.

Both Henry and Julian Hernandez have sought, and been granted, leave to intervene. Henry Hernandez has filed a motion in state court to determine the admissibility of the statements he gave during the interview with Karem. His counsel contends that it is necessary for Karem to divulge the names of *all* persons who assisted him in gaining access to Henry Hernandez to determine the degree of state involvement. Julian Hernandez, as to whom Henry's statements are exculpatory, hopes to learn additional exculpatory information or, at least, possible sources from which such information can be obtained. State involvement, and its effect on the admissibility of Henry's statements, is also important to Julian. Both Henry and Julian contend that *Miller* is inapplicable in a criminal case and, citing *Branzburg*, that the Constitution does not recognize a testimonial privilege for reporters. Assuming *Miller* does apply, they argue that the three-part test has been met.

*Branzburg*

The precise holding of the Supreme Court in *Branzburg* was that there is no First Amendment newsman's testimonial privilege, either qualified or absolute, arising from the receipt of confidential information, to refuse to answer relevant and material questions asked during a good-faith grand jury investigation. While stating that news gathering does qualify for First Amendment protection, the Supreme Court cited several prior cases which made it clear that the First Amendment does not invalidate every incidental burdening of the press that may result from the enforcement of civil or criminal statutes of general applicability. 408 U.S. at 681–682, 92 S.Ct. at 2656–57. Considering that grand jury proceedings are constitutionally mandated and noting the longstanding principle that "the public has a right to every man's evidence," the majority

... perceive[d] no basis for holding that the public interest in law enforcement and in ensuring effective grand jury proceedings is insufficient to over-

ride the consequential, but uncertain, burden on news gathering that is said to result from insisting that reporters, like other citizens, respond to relevant questions put to them in the course of a valid grand jury investigation or criminal trial. *Id.*, at 690–691, 92 S.Ct. at 2661. First Amendment protection is available if the grand jury investigation is initiated or conducted other than in good faith or if official harassment of the press is undertaken, not for purposes of law enforcement, but instead to disrupt a reporter's relationship with his news sources. *Id.*, at 707–708, 92 S.Ct. at 2670. Otherwise, the reporter is obligated to testify without regard to preliminary showings of relevance, unavailability of other sources, and a compelling state interest. *Id.*, at 699–701, 92 S.Ct. at 2666–67.

While the *Branzburg* opinion would seem to foreclose the argument in support of the existence of a qualified privilege for reporters, such has not been the case. Most of the circuit courts have recognized such a privilege and established a balancing approach to be utilized in determining whether the privilege can be invoked. The support for this position derives from the concurring opinion of Justice Powell in *Branzburg*, in which he states:

> The asserted claim to privilege should be judged on its facts by the striking of a proper balance between freedom of the press and the obligation of all citizens to give relevant testimony with respect to criminal conduct. The balance of these vital constitutional and societal interests on a case-by-case basis accords with the tried and traditional ways of adjudicating such questions.

*Id.*, at 710, 92 S.Ct. at 2671. Having repeatedly and thoroughly reviewed *Branzburg*, this Court cannot concur with the expansive reading given by other courts to this language and must humbly and respectfully disagree with those courts that have permitted a reporter to avoid giving evidence in a criminal case based upon an asserted First Amendment privilege.

In this circuit, *Miller* is the authority for such a privilege. However, *Miller* was a civil case and formulated a test for use in libel suits. *See In re Selcraig*, 705 F.2d 789, 799 (5th Cir.1983). The press' function as a vital source of information and the risk that that function would be impaired by compelling a reporter to disclose the identity of a source, prompted the District of Columbia Circuit to also recognize a qualified privilege and balancing test in civil cases. *Zerilli v. Smith*, 656 F.2d 705, 711 (D.C.Cir.1981) (citing *Miller*). While, arguably, *Branzburg*'s holding that no privilege exists, was intended to also apply in civil cases (408 U.S. at 682, 92 S.Ct. at 2657—"First amendment does not invalidate every incidental burdening of the press that may result from the enforcement of civil or criminal statutes"; 408 U.S. at 702, 92 S.Ct. at 2667—"[conditional privilege] would also have implications for the issuance of compulsory process to reporters at civil and criminal trials."), it clearly applies to criminal cases including, but not limited to, grand jury proceedings. 408 U.S. at 702, 92 S.Ct. at 2667; and, 408 U.S. at 690–691, 92 S.Ct. at 2661 ("reporters [must], like other citizens, respond to relevant questions put to them in the course of a valid grand jury investigation or criminal trial."); *Zerilli v. Smith*. Our circuit has not yet analyzed *Branzburg* in this latter context.

In *United States v. Burke*, 700 F.2d 70 (2d Cir.), *cert. denied*, 464 U.S. 816, 104 S.Ct. 72, 78 L.Ed.2d 85 (1983), the Second Circuit discussed the privilege in civil cases. The Court held that, to protect the important interests of reporters and the public in preserving the confidentiality of journalists' sources, disclosure may be ordered only upon a showing that the information is: (1) highly relevant and material, (2) necessary or critical to the maintenance of the claim, and (3) not obtainable from other available sources. 700 F.2d at 76–77. The Court saw no reason to draw a distinction between civil and criminal cases when considering whether a reporter's interest in confidentiality should yield to the movant's need for probative evidence. *Id.* The Third Circuit also recognizes that journalists have a federal common law qualified privilege to refuse to identify confidential

sources and that such privilege applies in criminal cases. *United States v. Cuthbertson,* 630 F.2d 139, 146 (3d Cir.1980), *cert. denied,* 449 U.S. 1126, 101 S.Ct. 945, 67 L.Ed.2d 113 (1981). That court rejected the notion that the interests of a criminal defendant always outweigh First Amendment interests, and directed that such interests be balanced. *Id.,* at 148. *See United States v. Criden,* 633 F.2d 346, 358 (3d Cir.1980), *cert. denied sub nom. Schaffer v. United States,* 449 U.S. 1113, 101 S.Ct. 924, 66 L.Ed.2d 842 (1981). The Ninth Circuit, citing Justice Powell's concurring opinion, also recognizes a qualified reporter privilege in criminal cases, requiring a balancing of the privilege against the need for disclosure. *Farr v. Pitchess,* 522 F.2d 464, 468 (9th Cir.1975), *cert. denied,* 427 U.S. 912, 96 S.Ct. 3200, 49 L.Ed.2d 1203 (1976). *Lewis v. United States,* 517 F.2d 236, 238 (9th Cir.1975).

In *United States v. Blanton,* 534 F.Supp. 295 (S.D.Fla.1982), *affirmed,* 730 F.2d 1425 (11th Cir.1984), the district court held that a reporter is immune from subpoena in a criminal case regarding his work product unless the party seeking disclosure makes the requisite showings of relevance and materiality, unavailability from other sources, and compelling need. 534 F.Supp. at 296–297. Even Supreme Court Justice Brennan, a dissenter in *Branzburg,* has cited Justice Powell's concurring opinion to support his (Justice Brennan's) conclusion that news reporters are not foreclosed from resisting a subpoena on First Amendment grounds and that a balancing of interests must be made. *In re Roche,* 448 U.S. 1312, 101 S.Ct. 4, 65 L.Ed.2d 1103 (1980) (granting stay of order adjudicating applicant in civil contempt for refusing to disclose the identities of news sources).

This Court finds it difficult to accept these holdings for several reasons. They are based upon the perceived need to protect the press in its news gathering function by preserving the confidentiality of sources of information. The *Branzburg* court considered this contention and found it to be speculative. 408 U.S. at 693–694, 92 S.Ct. at 2663. The evidence failed to demonstrate that there would be a significant constriction of the flow of news to the public without the privilege. *Id.* No evidence has been presented by Karem which indicates that, without a privilege, such a constriction would occur, or has, in fact, occurred since the *Branzburg* decision was rendered.

After announcing the policy reasons for their decisions, those courts recognizing the privilege then set forth the standards to be applied. They utilize, with minor variations, the three-part test discussed in *Miller.* In *Branzburg,* the newsmen did not claim an absolute privilege against official interrogation in all circumstances, but asserted that they should not be forced to appear or testify before a grand jury or at trial until and unless sufficient grounds are shown for believing that the reporter possesses information relevant to a crime the grand jury is investigating, that the information the reporter has is unavailable from other sources, and that the need for the information is sufficiently compelling to override the claimed invasion of First Amendment interests occasioned by the disclosure. 408 U.S. at 680, 92 S.Ct. at 2656.

The Supreme Court, while assuming that some confidential sources would be deterred from providing information, specifically rejected the need for this preliminary showing, the same showing required by *Miller* and the above-cited cases, holding instead that the public interest in pursuing and prosecuting crimes reported to the press by informants takes precedence over the public interest in the possible future news about crime from undisclosed, unverified sources. *Id.,* 408 U.S. at 695, 92 S.Ct. at 2663–64. Relevance is inherent, in the absence of a bad faith investigation by the grand jury. *Id.,* at 699–700, 92 S.Ct. at 2666. The state's interest in securing the safety of citizens and their property by the investigation of criminal conduct is compelling. *Id.,* at 700–701, 92 S.Ct. at 2666. Similar considerations negate the need for proof of unavailability of the information from other sources. *Id.,* at 701, 92 S.Ct. at 2666. *Branzburg,* therefore, stands for the proposition that, as a matter of law, the state's interest in investigating crime out-

weighs the press' interest in maintaining the confidentiality of its sources. In addition to the state's interest, the case before this Court, unlike *Branzburg*, also concerns a defendant's constitutional rights to compulsory process, confrontation of witnesses, effective assistance of counsel and a fair trial. Karem's First Amendment interests cannot be said to outweigh these very considerable interests. *United States v. La Rouche Campaign*, 841 F.2d 1176, 1182 (1st Cir.1988).

Finally, the balancing test implemented in the other courts was precisely the type of approach the *Branzburg* court sought to avoid.

> Under the case-by-case method of developing rules, it will be difficult for potential informants and reporters to predict whether testimony will be compelled since the decision will turn on the judge's *ad hoc* assessment in different fact settings of 'importance' or 'relevance' in relation to the free press interest. A 'general' deterrent effect is likely to result.... Leaving substantial discretion with judges to delineate those 'situations' in which rules of 'relevance' or 'importance' apply would therefore seem to undermine significantly the effectiveness of a reporter-informer privilege.

408 U.S. at 702 n. 39, 92 S.Ct. at 2667 n. 39. The Supreme Court disapproved of involving the lower courts in making preliminary factual and legal determinations with respect to whether the proper predicate had been laid for the reporters' appearance. *Id.*, at 705, 92 S.Ct. at 2669. Such value judgments are more properly left to the legislature. *Id.*, at 706, 92 S.Ct. at 2669.

In *In re Grand Jury Proceedings*, 810 F.2d 580 (6th Cir.1987), the Sixth Circuit affirmed an order holding a reporter in contempt for refusing to produce video tapes sought by a grand jury in its investigation of the murder of a police officer. It declined to join those circuit courts which have recognized a qualified reporter's privilege, following instead the literal holding of *Branzburg* that no such privilege exists. The Sixth Circuit also found that, read in context, the concurring opinion of Justice Powell, who also joined in the majority opinion, is entirely consistent with the majority opinion. *Id.*, at 585.

> In the sense that the balancing referred to by Justice Powell, when instigated by a reporter seeking to protect a confidential source, may result in the denial to a party of the use of evidence which is reliable, one is reminded of the invocation of a 'privilege,' as contrasted with an 'exclusion' which prohibits the introduction of evidence which is unreliable or calculated to mislead or prejudice. But, this balancing of interests should not then be elevated on the basis of semantical confusion, to the status of a first amendment constitutional privilege. Instead, courts should, as did the Michigan state courts, follow the admonition of the majority in *Branzburg* to make certain that the proper balance is struck between freedom of the press and the obligation of all citizens to give relevant testimony, by determining whether the reporter is being harassed in order to disrupt his relationship with confidential news sources, whether the grand jury's investigation is being conducted in good faith, whether the information sought bears more than a remote and tenuous relationship to the subject of the investigation, and whether a legitimate law enforcement need will be served by forced disclosure of the confidential source relationship.

*Id.*, at 586–586.

Pronouncements by the Supreme Court since *Branzburg* are consistent with its holding that no reporter privilege, either absolute or qualified, exists. In *New York Times Co. v. Jascalevich*, 439 U.S. 1317, 99 S.Ct. 6, 58 L.Ed.2d 25 (1978), Justice White, who wrote the majority opinion in *Branzburg*, denied an application for a stay of a civil contempt order, stating:

> There is no present authority in this Court either that newsmen are constitutionally privileged to withhold duly subpoenaed documents material to the prosecution or defense of a criminal case or

that a defendant seeking the subpoena must show extraordinary circumstances before enforcement against newsmen will be had.

439 U.S. at 1322, 99 S.Ct. at 10. Most recently, in a non-reporter situation, the Supreme Court reiterated its position that, inasmuch as testimonial exclusionary rules and privileges contravene the fundamental principle that the public has a right to every man's evidence, any such privilege must be strictly construed. *University of Pennsylvania v. Equal Employment Opportunity Commission*, —— U.S. ——, 110 S.Ct. 577, 582, 107 L.Ed.2d 571 (1990). Stating again that the balancing of conflicting interests is particularly a legislative function, the Supreme Court expressed a reluctance to recognize a privilege in an area where it appears that Congress has considered the relevant competing concerns but has not provided the privilege itself. *Id.* The *Branzburg* holding that a party seeking disclosure need not demonstrate a specific reason for disclosure, beyond a showing of relevance, was reaffirmed. *Id.*, 110 S.Ct. at 584.

Despite the circuit courts' interpretations and expansion of *Branzburg*, this Court finds its meaning clear—there is no absolute or qualified testimonial privilege for news reporters under the First Amendment. While news gathering is entitled to some First Amendment protection, such protection is reserved for those cases involving intrusions upon speech or assembly, prior restraint or restriction on what the press may publish, or an express or implied command that the press publish what it prefers to withhold. *Branzburg*, 408 U.S. at 681, 92 S.Ct. at 2656–57. No exaction or tax for the privilege of publishing, and no penalty, civil or criminal, related to the content of published material is at issue here. *Id.* The use of confidential sources by the press is not forbidden or restricted; reporters remain free to seek news from any source by means within the law. *Id.*, at 681–682, 92 S.Ct. at 2657. No attempt is made to require the press to publish its sources of information or indiscriminately disclose them on request. *Id.*

While even the *Branzburg* rule is subject to exceptions, none of them are applicable here. There is no claim by Karem, and no indication from the evidence, that the State or either defendant is seeking disclosure of the confidential sources in bad faith or to harass Karem and interfere with his relationship to the confidential sources. The identity of Karem's sources is relevant and has more than a remote or tenuous relationship to the subject matter of the investigation. Henry Hernandez' statements are a critical part of this case. If admissible, they will aid the State in its prosecution of Henry Hernandez and exonerate Julian Hernandez. If not properly obtained, they should not and cannot be used to establish Henry's guilt. The individuals who, in any way, participated in arranging the interview can testify to their role in this matter, enabling the state court to determine the admissibility of Henry's statements. The State has a considerable interest in prosecuting the murder of one of its law enforcement officers. The need to assure that persons charged with such a murder receive a fair trial through the benefit of their various constitutional rights, goes without saying. However, this interest could be no more substantial than it is in a case such as this, where each defendant faces the death penalty if convicted.

As a matter of law, the interests of the State in law enforcement and of the defendants to a fair trial outweigh Karem's interest in protecting his sources. According to *Branzburg*, a balancing of these interests on a case-by-case basis is not an appropriate judicial function. In the 18 years since *Branzburg* was decided, Congress has declined the invitation to create a qualified reporter's privilege with an accompanying balancing test. *See* 408 U.S. at 706, 92 S.Ct. at 2669. Its silence speaks as loudly as a written enactment. Pursuant to the dictates of *Branzburg*, this Court concludes that Karem has no right to refuse to disclose the names of his confiden-

tial sources.*

* Editor's Note: The remainder of the Recommendation was not adopted by Judge Garcia and is not published.