**Jennifer LENHART, Petitioner,**

v.

**Tommy THOMAS, Respondent.**

**Civil Action No. H–96–0072.**

United States District Court,
S.D. Texas,
Houston Division.

Jan. 23, 1996.

Joel R. White, Ogden Gibson & White, Houston, TX, for Jennifer Lenhart.

Karen B. Jewell, Vinson & Elkins, Houston, TX, for Texas Association of Broadcasters, Texas Daily Newspaper Association, Texas Press Association.

Scott Anthony Durfee, Harris County DA Office, Houston, TX, for State of Texas.

## MEMORANDUM AND ORDER

ROSENTHAL, District Judge.

Pending before this court is a petition for writ of habeas corpus filed by petitioner Jennifer Lenhart ("Lenhart"). Lenhart is a reporter for the *Houston Chronicle*. On December 19, 1995, Lenhart was adjudged in criminal contempt by order of the 209th District Court of Harris County, Texas, for refusing to disclose the identity of confidential sources for a news article she wrote concerning a grand jury proceeding.

Based on a careful review of the pleadings, the evidence presented, the argument of counsel, and the applicable law, this court GRANTS Lenhart's application for a writ of habeas corpus, for the reasons stated below.

## I. Background

In July 1995, a police officer for the city of Bellaire, Texas, shot and killed a seventeen year-old suspect. The suspect was shot twice in the back. The shooting, which received extensive public attention and news coverage, was referred to a grand jury. On September 26, 1995, the grand jury for the 180th Judicial District Court of Harris County, Texas issued a no bill.

On September 27, 1995, Lenhart wrote an article, published in the *Chronicle*, concerning the grand jury's failure to indict the police officer. On September 27, 1995, after this article appeared, two members of the grand jury contacted Lenhart by telephone.

Lenhart wrote another article concerning the shooting, which appeared in the September 29, 1995 issue of the *Chronicle*. (Docket Entry No. 2, Ex. A). That article, entitled "Grand jurors feel guilty over no-bill—Panel absolves police in killing," included information Lenhart obtained from the two members of the grand jury. The article stated as follows:

> Two members of a Harris County grand jury who had favored indicting Bellaire police Officer Michael Leal in the killing of a teen-ager described their deliberations as a grueling experience that left them feeling guilty that the panel did not indict the officer.

One grand juror said the discussion became emotional as it led to the final vote of 7 to 4, two votes short of the nine needed to indict.

"It wasn't like there was a split-second decision," said the juror. "There was a lot of controversy."

"I was driving home and I started crying three or four times," she added. "I wanted to call the boy's parents, and tell them, 'I'm sorry, this shouldn't have happened.'"

The Chronicle interviewed two members of the grand jury who contacted the newspaper Wednesday, the day after the decision. Both were among the seven who voted to indict, and both spoke on condition that they not be identified.

The fatal shooting of Travis Allen, a Lamar High School junior, occurred the night of July 15, when Leal and two other officers went to the scene of a reported breaking-and-entering incident in the 4400 block of Acacia.

Police went into the house to arrest Allen, who refused to come out. An autopsy subsequently found LSD, marijuana and caffeine in his body.

Leal fired two shots into Allen's back as the youth lay on the living room floor with another officer's foot on his back.

The grand jury voted not to indict Leal after hearing testimony from the three officers, but not from any of the other people who were subpoenaed.

"We already have so many people that have a negative attitude toward police," one grand juror said. "If you put a bad cop back on the street, what are you saying? You're saying, 'They're police. They can do whatever they want.'"

"We have done indictments on less evidence in other cases," another juror said.

In the wake of the grand jury's action, Allen's parents prepared to sue the Bellaire Police Department and the city of Bellaire.

"I've never done this before, I've never sued anyone, but it seems like it has to be done to have justice."

After the *Chronicle* published the September 29 article, John B. Holmes, Jr.

("Holmes"), the District Attorney of Harris County, began an investigation for the stated purpose of determining whether grand jury secrecy laws had been violated.[1] The office of the District Attorney requested each member of the grand jury to sign an affidavit stating whether they had spoken with Lenhart. On October 16 and 17, and November 8, 1995, eleven of the twelve grand jury members for the 180th District Court signed affidavits denying contact with Lenhart. One member of the grand jury, a woman, declined to sign an affidavit. This individual was subpoenaed to testify before the grand jury for the 209th Judicial District Court of Harris County, Texas, the Honorable Michael T. McSpadden, presiding. This individual refused to testify, invoking her Fifth Amendment right against self-incrimination.

On November 17, 1995, Holmes subpoenaed Lenhart to appear before the grand jury for the 209th District Court, in order to give testimony identifying the confidential sources referred to in the September 29, 1995 news article. Lenhart filed a federal court complaint, seeking to enjoin Holmes from compelling her to reveal her confidential sources. On December 18, 1995, United States District Judge Ewing Werlein abstained from exercising jurisdiction to issue the injunction under the *Younger* doctrine, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). (Docket Entry No. 2, Ex. E).

On December 19, 1995, Lenhart appeared before Judge McSpadden in response to the subpoena. In that hearing, Lenhart submitted an affidavit in which she stated that two grand jurors had contacted her on September 27, 1995, in response to the article on the grand jury's failure to indict the police officer. Both spoke only on the condition of anonymity. One was male and did not tell Lenhart his name. The other was female and did tell Lenhart her name. Both stated that they wished to speak to Lenhart because they felt the decision not to indict the Bellaire police officer was unjust. Neither juror requested or received any financial benefit for themselves in exchange for revealing information about the grand jury proceeding. (Docket Entry No. 2, Exhibit L, Lenhart Affidavit).

At the December 19, 1995 hearing before Judge McSpadden, on the State's motion to compel Lenhart to testify before the grand jury, Lenhart refused to disclose her sources. Lenhart claimed a Fifth Amendment privilege against self-incrimination and a First Amendment privilege not to disclose confidential sources. Judge McSpadden granted Lenhart use immunity from prosecution, but Lenhart refused to answer the following question: "If a member or members of the grand jury for the 180th District Court disclosed some or all of such proceedings to you in September or October of 1995, please identify them." Judge McSpadden determined that Lenhart had no privilege to keep her sources confidential, held her in contempt pursuant to Article 20.15 of the Texas Code of Criminal Procedure, and ordered that Lenhart be incarcerated until she was willing to testify.

Lenhart was released on $1,000.00 personal bond on December 19, 1995. The Texas Court of Criminal Appeals denied Lenhart's petition for writ of habeas corpus in a one-page order on January 9, 1996 and revoked her release on bond. (Docket Entry No. 2, Ex. G). Lenhart filed her petition for a writ of habeas corpus in this court on January 9, 1996. The parties agree that she has exhausted her state court remedies. (Docket Entry No. 2 at 4 and No. 9 at 7). On January 10, 1996, this court granted Lenhart's motion for release on bail *pendente*

---

1. TEX.CRIM.PROC.CODE ANN. § 20.02(b) (Vernon Supp.1996) provides as follows:

 A grand juror ... who discloses anything transpiring before the grand jury, regardless of whether the thing transpiring is recorded, in the course of the official duties of the grand jury shall be liable to a fine as for contempt of the court, not exceeding five hundred dollars, imprisonment not exceeding thirty days, or both such fine and imprisonment.

 TEX. PENAL CODE ANN. § 39.06(b) (Vernon 1994) provides as follows:

 A [grand juror] commits an offense if with intent to obtain a benefit or with intent to harm or defraud another, he discloses or uses information for a nongovernmental purpose that: (1) he has access to by means of his office or employment; and (2) has not been made public.

*lite,* and on January 16, 1996, set an evidentiary hearing for January 22, 1996.

In the brief filed in response to Lenhart's petition, respondent stated as follows:

There are no other sources of information for this matter. The only witnesses who can establish whether an improper disclosure was made to the Chronicle are the disclosing grand jurors and the reporter who received the disclosure. The jurors are either denying it or not talking. Applicant is the sole remaining source.

(Docket Entry No. 9 at 14). This position reiterated the State's argument to Judge McSpadden during the December 19, 1995 hearing, during which counsel for the State argued as follows:

[W]e have exhausted all alternative means of investigating this matter, other than asking the journalist to disclose her confidential source. In this matter, we have exhausted all other possible means....

(Docket Entry No. 2, Exhibit F, at 45).

On January 19, 1996, respondent asked this court for a continuance of the January 22, 1996 evidentiary hearing. Respondent informed the court that the continuance was necessary to allow the District Attorney's office to investigate whether the information sought from Lenhart was available through other means.

On January 18, 1996, another member of the grand jury contacted the Harris County District Attorney's office with a "tip." The "tip" was that a female member of the grand jury had told him that she intended to call the *Chronicle* with her concerns over the failure to indict. The new information included the name of the grand juror who admitted her intent to call the newspaper. The person named was the only member of the grand jury who had refused to sign the affidavit and invoked the Fifth Amendment.[2]

This new source of information signed a sworn statement that the named individual on the grand jury had admitted her intention to divulge grand jury proceedings to the *Chronicle.* (Transcript of January 19, 1996

Hearing at 1–4). This new source also provided the District Attorney with the names of two other individuals to whom the grand juror may have revealed that she intended to talk, or that she had talked, to the *Chronicle* about the grand jury's decision.

The day after this "tip," respondent moved for a continuance of the evidentiary hearing on the ground that the District Attorney's office needed more time to investigate. By agreement of the parties, the evidentiary hearing was canceled. Lenhart now asserts that she is clearly entitled to habeas relief based on respondent's admittedly incomplete investigation. The parties agree that the record is sufficient to enable this court to determine whether respondent has sufficiently exhausted alternative sources for the information he seeks from Lenhart.

## II. The Reporter's Qualified Privilege under the First Amendment

Lenhart contends she is entitled to relief because as a journalist, under the facts present here, she is privileged under the First Amendment not to disclose her confidential sources under compulsion of subpoena.

In *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972), nine justices agreed that reporters are entitled to some measure of qualified First Amendment protection from grand jury subpoenas. In a plurality opinion, the Court held that the reporters could be compelled to reveal sources to a grand jury on the facts presented, but also stated as follows:

[N]ews gathering is not without its First Amendment protections, and grand jury investigations, if instituted or conducted other than in good faith, would pose wholly different issues for resolution under the First Amendment. Official harassment of the press undertaken not for purposes of law enforcement but to disrupt a reporter's relationship with his news sources would have no justification. Grand juries are subject to judicial control and subpoenas to motions to quash. We do not expect

---

2. Counsel for respondent has informed this court that the new source could not have known which member of the grand jury had refused to sign an

affidavit or invoked the Fifth Amendment. (Transcript of January 19, 1996 hearing, p. 9).

courts will forget that grand juries must operate within the limits of the First Amendment as well as the Fifth.

408 U.S. at 707–08, 92 S.Ct. at 2670.

The Fifth Circuit follows the majority of jurisdictions in recognizing that the First Amendment provides journalists with a qualified privilege against compulsory disclosure of confidential sources. *See, e.g., In re Selcraig,* 705 F.2d 789 (5th Cir.1983); *Bruno & Stillman, Inc. v. Globe Newspaper Co.,* 633 F.2d 583 (1st Cir.1980); *United States v. Caporale,* 806 F.2d 1487, 1504 (11th Cir. 1986), *cert. denied,* 482 U.S. 917, 107 S.Ct. 3191, 96 L.Ed.2d 679 (1987). In *In re Selcraig,* the Fifth Circuit stated:

> We have recognized that the first amendment shields a reporter from being required to disclose the identity of persons who have imparted information to him in confidence. *Miller v. Transamerican Press,* 621 F.2d 721 (5th Cir.), *modified on rehearing,* 628 F.2d 932 (5th Cir.1980), *cert. denied,* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 238 (1981). Our course was dictated by our careful reading of the plurality and concurring opinions in *Branzburg v. Hayes,* 408 U.S. 665, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972). The privilege, we held, is not absolute, but qualified.

705 F.2d at 792.

■ Respondent's brief does not deny the existence of a qualified privilege. Instead, respondent asserts that to the extent that a qualified privilege exists for Lenhart, it has been overcome by substantial evidence under the three-part test recognized in this district. Under this test, a reporter's qualified privilege to refuse to disclose confidential sources can be overcome only if the testimony is: (1) highly material and relevant; (2) necessary or critical to the maintenance of the claim or defense; and (3) not obtainable from other sources. *Miller,* 621 F.2d at 726, *United States v. Burke,* 700 F.2d 70, 77 (2nd Cir.), *cert. denied,* 464 U.S. 816, 104 S.Ct. 72, 78 L.Ed.2d 85 (1983). The party seeking disclosure of a confidential informant's identity bears the burden of proving by substantial evidence that these three requirements have been met. *In re Selcraig,* 705 F.2d at 792; *Miller,* 621 F.2d at 726.

Under the applicable precedent, a First Amendment qualified privilege clearly extends to this case. *In re Selcraig,* 705 F.2d at 792; *Miller,* 621 F.2d at 726; *Campbell v. Klevenhagen,* 760 F.Supp. 1206 (S.D.Tex. 1991). Respondent asserts that he has met all three requirements necessary to overcome the privilege. Petitioner denies that any of the requirements are met on the record before this court.

Petitioner asserts that this court must balance the state's legitimate interest in protecting grand jury secrecy against the important First Amendment right at issue here, taking into consideration the nature of the speech and the nature of the interests sought to be protected by secrecy. This provides the context for the application of the qualified privilege. *See Douglas Oil Co. of California v. Petrol Stops, Etc.,* 441 U.S. 211, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979) (recognizing the importance of grand jury secrecy); *Stern v. State ex rel. Ansel,* 869 S.W.2d 614, 621–22 (Tex.App.—Houston [14th Dist.] 1994, writ denied).

■ In the present case, the speech at issue clearly enjoys First Amendment protection; it is speech relating to a grand jury investigation into alleged government misconduct. *See, e.g., Butterworth v. Smith,* 494 U.S. 624, 632, 110 S.Ct. 1376, 1381, 108 L.Ed.2d 572 (1990); *Gentile v. State Bar of Nevada,* 501 U.S. 1030, 1034, 111 S.Ct. 2720, 2724, 115 L.Ed.2d 888 (1991). Petitioner argues that this court must weigh the importance of such speech against the State's diminished interest in protecting grand jury secrecy where, as here, the grand jury proceeding is already over; the suspect, the witnesses, the witnesses's testimony, and the grand jury's vote are already public; there is no risk of flight; and there is no realistic possibility of importuning the grand jurors. *See, e.g., Butterworth,* 494 U.S. at 631–32, 110 S.Ct. at 1380–81.

Petitioner also argues that the three-part test cannot be met because respondent has failed to show any evidence that a crime has occurred, that Lenhart possesses information

relevant to the prosecution of any crime,[3] and that alternative means of obtaining the information have been exhausted.

As set out below, this court finds that respondent has not met the requirement of showing that alternative means of obtaining the information have been exhausted.

### III. The Availability of Other Sources for the Information Sought

 The law is clear that compulsory disclosure of a reporter's confidential sources should be the last resort for obtaining information; all other means must first be exhausted. *Campbell,* 760 F.Supp. at 1216; *Mize v. McGraw–Hill,* 82 F.R.D. 475, 477 (S.D.Tex.1979), *aff'd on reh'g,* 86 F.R.D. 1 (S.D.Tex.1980); *Zerilli v. Smith,* 656 F.2d 705, 714 (D.C.Cir.1981); *Riley v. City of Chester,* 612 F.2d 708, 717 (3rd Cir.1979); *United States v. Hubbard,* 493 F.Supp. 202, 205 (D.D.C.1979). Respondent must fulfill his obligation to exhaust alternative sources even though he fears that the investigation may be time consuming, costly, and unproductive. *Zerilli,* 656 F.2d at 714.

 The courts have required the party requesting compulsory disclosure to exhaust all non-party sources of information and otherwise demonstrate to the court unsuccessful, independent attempts to gain the requested information. *LaRouche v. National Broadcasting Co.,* 780 F.2d 1134, 1139 (4th Cir.), *cert. denied,* 479 U.S. 818, 107 S.Ct. 79, 93 L.Ed.2d 34 (1986); *Summit Technology v. Healthcare Capital Group,* 141 F.R.D. 381, 385 (D.Mass.1992). Interviewing as many as

sixty different people may be a reasonable prerequisite to compelling disclosure. *Zerilli,* 656 F.2d at 714; *In re Roche,* 448 U.S. 1312, 101 S.Ct. 4, 65 L.Ed.2d 1103 (1980) (Brennan, J. in chambers) (staying contempt citation where party seeking disclosure failed to depose sixty-five witnesses). Where a potential alternative source of information is known and can be deposed, that source must be pursued prior to forcing the reporter to reveal her confidential source. *Blum v. Schlegel,* 150 F.R.D. 42, 46 (W.D.N.Y.1993).

From September 29, 1995 until January 18, 1996, the investigation into the identities of the grand jurors who had talked to Lenhart consisted of seeking affidavits from the twelve original grand jurors as to their contact with Lenhart. Respondent consistently took the position that all other sources had been exhausted and that Lenhart was the only possible source of the information. (Docket Entry No. 2 at 24–26; Petitioner's State Court Motion for Protection at 11).

On January 18, 1996, the district attorney's office received the "tip" described above. Before that information was received, the investigation had not extended beyond asking the members of the grand jury to confess if they had divulged information about the grand jury's proceedings to the *Chronicle.* No other investigation was done. In particular, there was no investigation into whether any of the grand jurors may have admitted to others that they had or intended to speak to the press.

Respondent now knows the names of two people to whom the only grand juror who

---

**3.** Petitioner argues that the Texas Penal Code, § 39.06, cannot apply to this case because there is no suggestion that the grand jurors who spoke to Lenhart did so for personal gain or with intent to harm another. Respondent contends that the grand jurors who spoke with Lenhart may have violated section 39.06 because they may have been motivated by an intent to harm the reputation of Leal or one of their fellow grand jurors. (Lenhart Reply Brief at 1). Lenhart argues that such a construction of section 39.06 would effectively make section 39.06 a criminal libel statute, violating the First Amendment. *See Garrison v. Louisiana,* 379 U.S. 64, 67, 85 S.Ct. 209, 212, 13 L.Ed.2d 125 (1964) (holding that the First Amendment prohibits criminal sanctions for true statements made with an intent to inflict harm). Petitioner also argues that Article 20.02(b) of the

Texas Code of Criminal Procedure is by its terms limited to enforcement by the judge who empaneled the grand jury the secrecy of which has been breached. (Docket Entry No. 2 at 23).

Finally, petitioner asserts that the Texas perjury law cannot apply here. As a matter of law, the female grand juror who declined to disclose any communications with Lenhart on the basis of the Fifth Amendment did not commit perjury. Lenhart did speak with a male who identified himself as a member of the grand jury, but who declined to give his name. Even if that individual committed perjury by signing an affidavit denying any contact with Lenhart, Lenhart does not know his name and cannot as a matter of law possess information critical to the prosecution of perjury.

invoked the Fifth Amendment may have revealed her intent to speak to the press. Respondent also has a third witness who has signed a sworn affidavit stating that this grand juror admitted to him that she was planning on speaking to the *Chronicle.* Respondent now wishes to investigate these leads. As a matter of law, respondent has not exhausted alternative means for identifying the grand juror who revealed confidential information.

Respondent argues that this third witness may have credibility problems, arising from certain medical problems and a criminal history. Respondent asserts that depending on the outcome of its ongoing investigation, it may yet require Lenhart to identify her source in order to prosecute the breach of grand jury secrecy. Respondent therefore asks this court to delay its ruling until the investigation is complete.

■ The law does not support this position. Respondent was clearly required to exhaust alternative means of obtaining the information before Lenhart could constitutionally be required to disclose her confidential sources and held in contempt for refusing. *Campbell,* 760 F.Supp. at 1216; *Mize,* 82 F.R.D. at 477; *Zerilli,* 656 F.2d at 714. It is not constitutionally permissible to hold Lenhart in contempt for not disclosing information covered by a qualified privilege while respondent determines whether it can obtain that same information from another source. *Campbell,* 760 F.Supp. at 1216; *Zerilli,* 656 F.2d at 714; *Blum,* 150 F.R.D. at 46.

On the present record, this court concludes that respondent has not met the requirement of showing that the information sought can only be obtained from Lenhart. The adjudication of contempt is unconstitutional as a violation of petitioner's First Amendment qualified privilege. The application for a writ of habeas corpus is GRANTED.

## IV. Order

This court **GRANTS** Lenhart's application for a writ of habeas corpus and sets aside the order of contempt against her.