**Irene PEREZ, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 58111.**

Court of Criminal Appeals of Texas, Panel No. 3.

Nov. 14, 1979.

Rehearing En Banc Denied Dec. 19, 1979.

J. G. Hornberger and J. G. Hornberger, Jr., Laredo, for appellant.

Charles R. Borchers, Dist. Atty., Laredo, Robert Huttash, State's Atty., Austin, for the State.

Before ROBERTS, PHILLIPS and DALLY, JJ.

## OPINION

PHILLIPS, Judge.

This is an appeal from a conviction for tampering with governmental records. V.T.C.A. Penal Code, Section 37.10. Punishment was assessed at imprisonment for five years, probated, and a $5,000 fine.

Appellant challenges the sufficiency of the evidence to support the conviction and raises various complaints concerning the examining trial, the Grand Jury proceedings, the denial of pretrial motions, the exclusion of evidence at trial, and the court's charge to the jury. Appellant also complains of the court's denial of her motion for new trial and motion in arrest of judgment.

Appellant was convicted of impairing the availability of governmental records, namely automobile transfer tax receipts, by withholding such receipts, with the intent to harm the State of Texas. See Section 37.10(a) and (c) of the Penal Code. Appellant contends she was entitled to a directed verdict of acquittal.

At the time of the offense appellant worked for the Webb County Tax Assessor-Collector's Office in Laredo, registering cars and collecting the 4 percent State sales tax that is levied on automobile transfers. Appellant's job was to collect the payment and issue receipts to the transferring parties, and at the end of the day to turn in the money collected and additional copies of the receipts to the cashier. One of the copies was retained by the Tax Assessor-Collector's Office, one was sent to the State Highway Department, and one was sent to the State Comptroller's Office. The receipts for the Comptroller's Office were filed in the county office for one month, then were sent, along with 95 percent of the sales tax

amount represented by the receipts, to the Comptroller's Office in Austin. Five percent of the tax was retained by Webb County. Appellant was convicted of withholding the Comptroller's copy of the receipt that had been issued to Arthur Ochoa on August 24, 1976.

Tom Gay testified that in January 1977, pursuant to his authority as a Field Auditor for the Comptroller's Office, he audited the Webb County Tax Assessor-Collector's Office. As a result of the audit Gay determined that some 2,395 Comptroller receipts of an estimated value of $250,000 had not been turned in to the Comptroller's Office as required. Gay could not locate the receipts in the Tax Assessor-Collector's Office. Gay asked appellant if she had any of the receipts, and appellant gave Gay 80–100 receipts worth approximately $3,900. Appellant told Gay that those receipts were all she had. Appellant's brother wrote Gay a check for $3,900 to cover the amount represented by the receipts.

Upon deeper investigation further receipts turned up, including a batch of 590 receipts that appellant returned through her attorney. Ochoa's receipt was part of this batch. Only a small part of the money represented by the receipts was recovered by the State. Most of the receipts were identified as having been issued by or under authority of appellant by the presence of the initials "IP" on the face of the receipts. The Ochoa receipt was so initialed.

Appellant testified that shortages began appearing in the Tax Assessor-Collector's Office in 1969 or 1970. These shortages took the form of appellant and others who worked at the windows not having enough money at the end of the day to cover the amount represented by the receipts. According to appellant the receipts could not be turned in unless the payment equaled the amount of the receipts. When the money came out short, appellant would turn in only enough receipts to equal the money she had and would retain the rest of the receipts. This went on for a period of years. Appellant testified that she kept the receipts in envelope boxes at her desk and in a small closet next to her desk.

Appellant admitted that she withheld the Ochoa receipt on August 24, 1976, the day it was issued, and further admitted that she had not turned the receipt in by September 10, 1976, when that receipt and the others that had been issued in August were due at the Comptroller's Office in Austin. The evidence showed that, although she retained the Ochoa receipt, she turned in the check that had accompanied that receipt, presumably to cover other receipts. Appellant knew that these receipts were due in Austin by September 10th. Appellant testified that on January 19, 1977, she delivered to Gay over 1,000 delinquent receipts. She delivered a check for over $10,000 along with these receipts. Later in the month she delivered the batch of receipts that included the Ochoa receipt.

Ron Hamilton, Regional Supervisor for the State Department of Highways and Public Transportation, testified that in May 1974 he conducted an audit of the Webb County Tax Assessor-Collector's Office and found that 24 receipts were missing, at an estimated value to the State of $13,248. He discussed the matter with appellant; she went home and returned with the receipts. She wrote out a personal check of over $3,000 to help cover the amount of the receipts.

Both Hamilton and Gay testified that receipts due from Webb County to their respective offices were often months late. Gay also testified in rebuttal to appellant's testimony that when he conducted his audit he did not find any of the delinquent receipts, even though he looked in and around her desk and in the closet near her desk.

█ The evidence showed that it was one of appellant's duties to turn in the tax receipts at the end of the day. The evidence showed that appellant intentionally failed to turn in the Ochoa receipt until months after it was due, even though she turned in the payment that had accompanied that receipt. Clearly her action impaired the availability of that governmental record. Her intent to harm the State is evidenced by her continuing action of with-

holding thousands of dollars worth of similar receipts, her actions in paying for the receipts with checks written on her personal account, and upon being discovered, her telling Gay that the 80–100 receipts she gave him were all the receipts she had. Gay's testimony that the receipts were not in the office also indicates that appellant either took the delinquent receipts she had in her possession from the office, or hid them somewhere in the office. Appellant knew that the receipts were to go to the Comptroller's Office each month. Appellant turned in over 1,500 delinquent receipts in three large batches when the audit uncovered that the receipts were missing. Appellant's behavior is simply not consistent with innocent or unintentional action. We find the evidence sufficient to sustain the conviction; a directed verdict of acquittal was not in order.

In a series of related grounds of error appellant complains of the court's refusal to require that the Grand Jury proceedings be recorded, its refusal to permit her to inspect the minutes of the Grand Jury, and its refusal to pierce the secrecy of the Grand Jury and set aside the indictment on the ground that the District Attorney was present during the Grand Jury's deliberations.

■■■ As appellant concedes, there is no requirement, statutory or otherwise, that Grand Jury testimony be recorded and transcribed. See *Tibbetts v. State,* 494 S.W.2d 552 (Tex.Cr.App.1973); *Acuff v. State,* 433 S.W.2d 902 (Tex.Cr.App.1968). In its order denying appellant's motion to inspect the minutes of the Grand Jury, the court noted that, as was the custom in the 49th District Court, no minutes were taken or recorded. The District Attorney also testified at a pretrial conference that no minutes were taken. Moreover, appellant did not make a showing of a particularized need for the minutes of the Grand Jury. *Tibbetts v. State,* supra; *Terry v. State,* 489 S.W.2d 879 (Tex.Cr.App.1973).

Appellant also filed a motion to pierce the secrecy of the Grand Jury proceedings and a motion to set aside the indictment, alleging that the District Attorney had been present during the Grand Jury's deliberations. Both motions were denied. Appellant filed no affidavits that supported these allegations, and her motions are mainly based on speculation and beliefs of defense counsel as to what might have been going on in the Grand Jury room. Appellant presented no evidence to support the allegations. The court properly denied these motions. See *Tibbetts v. State,* supra; *Terry v. State,* supra. Appellant's contentions regarding the Grand Jury proceedings are overruled.

■■■ Appellant contends that the indictment should be set aside because she was denied the right to call witnesses at the examining trial. At the examining trial the State presented the testimony of Texas Ranger Ramiro Martinez. The court ruled Martinez's testimony sufficient to establish probable cause to bind appellant over to the Grand Jury. Appellant then called Cruz Cabello and Francisco Flores, the Webb County Tax Assessor and Collector, to testify. Neither witness testified to any matter that put the previous determination of probable cause into question. When it became apparent that appellant's witnesses had nothing material to offer, the court cut off Flores's testimony. Appellant objected to that action and to the court's refusal to call further witnesses to enable her to attack the existence of probable cause. The court did not err because sufficient evidence to justify holding appellant under bond had already been presented by the State and appellant's witnesses were offering nothing to rebut such probable cause. Moreover, the refusal to allow appellant to call further witnesses at the examining trial provides no basis to set aside the indictment. As this Court has previously noted, the return of a true bill of indictment independently satisfies the principal purpose and justification of the examining trial—to show that there is probable cause to believe the accused committed the offense charged. See *Brown v. State,* 475 S.W.2d 938 (Tex.Cr.App.1971); *Harris v. State,* 457 S.W.2d 903 (Tex.Cr.App.1970). No error is shown.

■ Appellant contends that the indictment should have been set aside because the trial court did not have jurisdiction over the cause at the time the indictment issued. Two days after the examining trial appellant filed a petition for a writ of mandamus in the 111th District Court of Webb County, requesting that the judge who had presided at the examining trial be ordered to hold another examining trial. The 111th District Court, traditionally a civil court, refused to take jurisdiction. Appellant then applied to the same court for a temporary injunction against the Webb County District Attorney enjoining him from taking appellant's case before the Grand Jury prior to appellant's receiving another examining trial. Again the 111th District Court refused to take jurisdiction. Appellant then filed a petition for a temporary injunction in the Court of Civil Appeals in San Antonio. Her petition was denied. The courts to which appellant applied for relief never took jurisdiction of the matter; the trial court was never deprived of jurisdiction nor was the State prohibited from properly pursuing an indictment. Appellant's contention is without merit.

■ Appellant contends that the court improperly denied her motion for discovery of exculpatory evidence and motion to compel the District Attorney to comply with the court's discovery order. Appellant filed numerous motions relating to discovery of various items, and on appeal she does not specify which action of the court she considers erroneous. The record reflects that the trial court granted appellant's motions for discovery of exculpatory and documentary evidence and ordered the District Attorney to supply appellant with all exculpatory and documentary evidence material to appellant's prosecution. Appellant does not specify what material, if any, was withheld or to which she was denied access; nor does appellant allege or show any harm. Appellant nowhere shows that the unspecified matter of which she complains was material to her defense or that such matter was in the possession of the State. See *Bell v. State*, 442 S.W.2d 716 (Tex.Cr.App.1969). This ground of error is without merit.

■ Appellant next contends that the court erred when it quashed the subpoenas duces tecum of then Attorney General John Hill and State Comptroller Bob Bullock. Both officials filed affidavits stating that they did not have personal knowledge of facts material to the case. Both acknowledged in the affidavits that they had possession of certain documents demanded in the subpoenas and stated that they would make those documents available to the defense. Upon demand by the court at the hearing on the motions to quash, appellant was unable to show what Hill and Bullock would testify to that would be material to her defense. See *Jones v. State*, 501 S.W.2d 677 (Tex.Cr.App.1973); *Spencer v. State*, 503 S.W.2d 557 (Tex.Cr.App.1974). The affidavit that accompanied appellant's motion to quash does not show that Hill or Bullock knew anything that was material to appellant's defense, nor does appellant allege anything in her brief on appeal to show that the two men would have been material witnesses. The court did not err in refusing to require Hill and Bullock to personally appear as witnesses at appellant's trial.

■ Appellant called Ron Hamilton as a defense witness. On cross-examination of Hamilton the State elicited testimony harmful to the defense. Appellant's counsel then attempted to impeach Hamilton, claiming he had become a hostile witness. The court refused to allow appellant to impeach Hamilton. Appellant contends this was error. Appellant never laid a predicate for impeaching Hamilton—she did not claim surprise, and she did not demonstrate surprise by showing outside the presence of the jury that the witness had made prior statements inconsistent with his trial testimony. See *Brown v. State*, 523 S.W.2d 238 (Tex.Cr. App.1975); *Banks v. State*, 510 S.W.2d 592 (Tex.Cr.App.1974). Absent such a predicate, appellant was not entitled to impeach Hamilton. This contention is overruled.

■ Appellant offered into evidence an indictment pending against her in a related cause, in a further effort to impeach Hamil-

ton's testimony. As pointed out above, appellant did not establish a predicate for impeaching Hamilton. Moreover, the indictment had extremely limited probative value, if any at all, when offered for purposes of impeachment. The court properly excluded the indictment from evidence.

■ Appellant complains of the court's refusal to allow her to elicit from Gay that Francisco Flores and Arturo Villareal, the supervisor of the Tax Assessor-Collector's Office, told Gay during his audit that they had known about the receipt shortages for several years. Appellant urges that such statements were admissible as declarations against penal interest on the part of Flores and Villareal. These statements were contrary to Flores and Villareal's penal interest in that they tended to make the two men parties to the offense in this case. It is well established, however, that declarations of a third party admitting guilt of the offense for which the defendant is on trial are admissible only when, among other things, the guilt of the third party is inconsistent with the defendant's guilt. *Ramirez v. State,* 543 S.W.2d 631 (Tex.Cr.App.1976); *Cameron v. State,* 153 Tex.Cr.R. 29, 217 S.W.2d 23 (Tex.Cr.App.1949). Such is not the case here. This contention is overruled.

■ Appellant urges that the court erred when it instructed the jury that evidence of extraneous offenses consisting of appellant's withholding tax receipts other than the Ochoa receipt were to be considered only for the purpose of showing appellant's system, intent, and design. It is appellant's position that the charge should have limited the jury's consideration solely to appellant's intent. We disagree. The extraneous offenses also tended to show a continuous course of action by appellant, amounting to system and design on her part. Extraneous offenses are admissible to show system and design as well as intent. See *Albrecht v. State,* 486 S.W.2d 97 (Tex. Cr.App.1972). No error is shown.

■ Appellant complains of the exclusion from evidence of the monthly reports that went to the Comptroller's Office in the years 1973, 1974, and 1975; she also complains of the exclusion of the subpoena issued for Allen Beeson, the State Auditor for Webb County. The gist of appellant's complaint in both grounds is that those documents show that county and State officials knew receipts were being withheld at the Webb County Tax Assessor-Collector's Office. The alleged knowledge of county and State officials that receipts were being withheld does not tend to prove appellant's innocence and is not relevant to any other issue at trial. Any probative value would have been outweighed by the confusion the evidence would have caused the jury. The court did not abuse its discretion in ruling this evidence inadmissible. See *Albrecht v. State,* supra; *Hernandez v. State,* 484 S.W.2d 754 (Tex.Cr.App.1972).

■ Appellant complains of the court's refusal to instruct the jury on the law of circumstantial evidence. Appellant's own testimony showed that she withheld the Ochoa receipt. When a defendant admits committing the act and only intent is at issue, no charge on circumstantial evidence is required. *Baldwin v. State,* 538 S.W.2d 109 (Tex.Cr.App.1976). Appellant complains of the court's refusal of various other of her requested instructions. Our review of the record shows that the requested instructions were covered by the main charge, see *Bridges v. State,* 422 S.W.2d 449 (Tex.Cr.App.1967), or constituted misstatements of the law or comments on the weight of the evidence. No error is shown.

■ Appellant filed a motion for new trial in which she alleged that the State fraudulently prevented certain witnesses from attending the trial. She complains of the court's denial of her motion. The record does not reflect that a hearing on appellant's motion for new trial was held. Appellant attached no affidavits to support her motion for new trial. In the absence of any evidence to support the allegations, the court did not err in denying appellant's motion for new trial. *Pinson v. State,* 530 S.W.2d 946 (Tex.Cr.App.1975); *Rios v. State,* 510 S.W.2d 326 (Tex.Cr.App.1974).

Moreover, appellant filed no motion for continuance to obtain more time to secure the presence of the witnesses. See *Robinson v. State,* 453 S.W.2d 836 (Tex.Cr.App.1970); *Young v. State,* 374 S.W.2d 891 (Tex.Cr. App.1964). No error is shown.

Finally, appellant contends that the court should have granted her motion in arrest of judgment. Appellant alleges that the indictment was vague and indefinite in that it failed to allege from whom the Ochoa receipt was withheld. The motion was timely filed. The indictment alleged that appellant "intentionally impair[ed], by withholding, the availability of a governmental record of the tenor following: [a photostatic copy of the Ochoa receipt is then attached] with intent to harm another, namely, the State of Texas." In order to state the offense it was not necessary to allege from whom the receipt was withheld. In any event the receipt on its face showed that it was to be sent to the Comptroller's Office; that constituted sufficient notice that the receipt was withheld from the Comptroller's Office. We note that no motion to quash the indictment was filed; if appellant did not have sufficient notice of what she was charged with, she should have filed such a motion rather than waiting until the trial was completed and then filing a motion in arrest of judgment. Error, if any, is waived. See *Reed v. State,* 373 S.W.2d 687 (Tex.Cr.App.1963); *Benson v. State,* 93 Tex.Cr.R. 308, 247 S.W. 510 (Tex. Cr.App.1923).

The judgment is affirmed.