Debra BOWSER, Appellant,

v.

The STATE of Texas, Appellee.

No. 13–91–056–CR.

Court of Appeals of Texas,
Corpus Christi.

Aug. 29, 1991.

Bill May, Corpus Christi, for appellant.

Grant Jones, Susan Snyder, Corpus Christi, for appellee.

Before NYE, C.J., and DORSEY and HINOJOSA, JJ.

## OPINION

DORSEY, Justice.

A jury found appellant guilty of murder and assessed her punishment at fifty years in prison. Four points of error are raised: the refusal of the trial judge to issue a writ of attachment for a subpoenaed witness, error in closing argument during the punishment stage in commenting on the failure of the defendant to testify, improper jury argument during the trial on guilt, and the failure of the trial court to order a competency hearing. For error which occurred in the punishment phase of trial, we will reverse the judgment and remand the cause to the trial court. *See* Tex.Code Crim.Proc. Ann. art. 44.29(b) (Vernon Supp.1991).

Although appellant does not attack the sufficiency of the evidence, we will briefly summarize the facts to place appellant's points of error in context. Appellant shot and killed Kathy Bedford, a former lover, outside of appellant's house in the early morning hours of August 19, 1990. Although the reasons for Bedford being at appellant's house at that time were not definitively established, the evidence shows that appellant and Bedford argued and that appellant shot Bedford several times. A jogger who witnessed a portion of the incident testified that appellant followed Bedford and shot her. Bedford died as a result of the gunshots wounds.

In a statement to the police, appellant stated that Bedford had been trying to climb into her house through the kitchen window. She stated that she fired and missed Bedford as she tried to climb in the window. Appellant then said she went outside and fired two more shots. Because there was some evidence that Bedford was trying to get into appellant's house, the trial court included a charge on defense of property in its instructions to the jury.

In her second point of error, appellant argues the trial court erred in denying her request for writ of attachment for an absent witness during the hearing on punishment because such denial violated her right to compulsory process.

Defense counsel advised the judge at approximately 9:30 in the morning before the jury had been seated to begin hearing evidence on punishment that the defendant had subpoenaed a Dr. Lerma to appear in court that morning *instanter*. The court announced that it was ready to begin the punishment stage, and counsel advised the judge that it was his information that the doctor had been served and was on his way to court. The court then recessed. At 10:10 the court reconvened, and counsel advised the judge that the doctor had been served but was still at his office and requested a writ of attachment to bring the doctor to the courthouse. The judge inquired as to the testimony of the doctor to which counsel responded that the doctor was a psychiatrist or a psychologist that

had examined the appellant as to her emotional and mental state and the results of such an examination would properly be considered by the jury at the punishment phase of the trial. Counsel said he believed the doctor would testify that appellant suffered from some degree of paranoid schizophrenia, but the doctor had refused to speak with him about his diagnosis.

The trial court refused to order the writ of attachment issued and proceeded with the trial. The State called no witnesses at the punishment stage and the defense called one, Mary Lou Lane, the mother of the defendant. She testified that the defendant was a nervous-type person and had gone to a physician for the treatment of mental problems in July of 1990. After the doctor's name was called outside the courtroom without result, the defense rested.

After closing argument and after the jury retired, but before the exhibits had been sent into the jury room, the doctor appeared in the courtroom and counsel for the defense requested an opportunity to reopen to allow the doctor to testify. The request was refused by the trial judge. The doctor testified in a bill of exceptions that we have here.

■ An accused is guaranteed under both the Texas and United States Constitutions the right to compulsory process to compel the attendance of a witness at trial. Supplementing the constitutional requirements is Tex.Code Crim.Proc.Ann. art. 24.12 (Vernon 1989) which provides that when a witness who has been subpoenaed fails to appear, the State or the defendant shall be entitled to have an attachment issued forthwith for such witness. In addition to the statutory requirement to issue a writ of attachment for a nonappearing subpoenaed witness, judges have an inherent power to issue compulsory process without regard to statutory authorization in order to protect the rights guaranteed by the Texas Constitution, Article 1, Sec. 10. *Bludworth v. State*, 168 Tex.Crim. 549, 330 S.W.2d 436 (Tex.Crim.App.1959).

■ When the subpoenaed witness fails to appear, and a writ of attachment is

sought by either the State or the defense, as either is entitled under article 24.12, the trial court should issue the writ of attachment. When the court's failure to issue the writ is reviewed on appeal, three questions are addressed: 1) was the writ of attachment requested; 2) is there a showing as what the absent witness would have testified to, *Rodriguez v. State*, 513 S.W.2d 22, 28 (Tex.Crim.App.1974); *Brito v. State*, 459 S.W.2d 834, 837 (Tex.Crim.App.1970); and 3) would the testimony have been material and relevant. *Erwin v. State*, 729 S.W.2d 709, 713 (Tex.Crim.App.1987).

■ Here, Dr. Lerma was subpoenaed and did not appear. Defense counsel requested a writ of attachment and told the court what he believed the witness would testify about. It was error for the trial court to refuse to issue the writ of attachment.

Our next inquiry is whether Dr. Lerma's evidence was material and relevant. Dr. Lerma testified that he arrived in the courtroom at about 10:45 that morning. He related that he saw the patient on July 25, 1990, to determine whether she was suffering from a mental or emotional disability. The referral came from the Texas Rehabilitation Commission. Dr. Lerma testified that the defendant's mood was one of severe depression, and she was crying continuously throughout most of the session. He found her to be suffering from perceptual disorders and that her ability to discern reality adequately was impaired. She apparently suffered from hallucinations on a daily basis, and she had a number of symptoms that were consistent with a severe state of depression. Her intelligence showed her to be moderately retarded. Her reading, spelling, and arithmetic tested below third grade level. He found her to be severely and psychotically depressed and overly psychotic. He examined her between three and four hours.

When asked if the patient or a relative of hers was notified as to the results of his tests, Dr. Lerma testified that generally on these types of evaluation, they do not inform anyone but the agency that requested the test. Dr. Lerma said that he advised the defendant's sister that the defendant needed to be hospitalized soon because of the severity of her depression. His final diagnosis was major depression recurrent with psychotic features.

■ By allowing separate trial for guilt and punishment, this State allows a more searching inquiry to be made into the appropriate punishment for one found guilty of a crime. The test for relevancy of the evidence is much broader at the punishment stage, the purpose being to allow the factfinder as much useful information as possible in deciding the appropriate punishment for the individual defendant. That the defendant was examined by a doctor of psychology one month prior to the offense and was diagnosed as being overtly psychotic and severely depressed, was material and relevant to the determination of punishment.

The final determination by the Court of Appeals is whether the exclusion of this material and relevant evidence beyond a reasonable doubt had no affect on the sentence assessed. Tex.R.App.P. 81(b)(2). The jury assessed a fifty-year sentence after hearing only one witness testify during the punishment stage. The jury may not have found Dr. Lerma's evaluation to have been helpful in the determination, however, we cannot say beyond a reasonable doubt that it made no contribution toward the punishment received.

Appellant's second point of error is sustained.

■ In her third point of error, appellant contends that the prosecutor commented on her failure to testify at the punishment phase of trial.[1] We agree and sustain this point of error. Specifically, appellant argues that the State impermissibly commented on her failure to testify when the

---

1. A prosecutor's comment on a non-testifying defendant's courtroom demeanor raises two distinct complaints. One is that the argument refers the jury to matters not in evidence. The other is that the argument refers to the defendant's failure to testify. *See Coffey v. State*, 796 S.W.2d 175, 180 (Tex.Crim.App.1990).

prosecutor asked the jury to consider appellant's courtroom demeanor as a factor in assessing punishment. The State responds that the argument was not a comment on appellant's failure to testify, that the comment was invited and therefore permissible, and that if the comment was improper, it was harmless. To address appellant's point, we will first set out the complained of argument in context and then address the law relating to such argument and the State's responses to appellant's allegation.

After appellant presented his argument at the punishment phase, the prosecutor argued that appellant should receive at least fifty years in prison. She listed various items which the jurors should consider to justify that punishment. After asking the jury to consider the particular actions of the defendant on the night she killed the victim, Kathy Bedford, the prosecutor stated:

> Consider that in your punishment. Those are awful deliberate actions, ladies and gentlemen. I don't think that's the actions of somebody who's nervous. Consider a Defendant who persists in this story. Consider the lies that she called the police, I'm not even—I can just keep going, but consider the lies that she told the police about calling help for Kathy, about showing them the shells. We know those are lies. You decided by your verdict of guilty that those were lies. *Consider the Defendant's lack of compassion, her demeanor in this Court.* Consider the total fear of witnesses of this—

At this point, appellant objected to the prosecutor's comment concerning appellant's demeanor in the court as a comment on her failure to testify. The trial court overruled the objection, and the prosecutor continued her list of items for the jury to consider.

▇ A prosecutor's comment on a defendant's failure to testify at the punishment phase of trial offends both the State and Federal Constitutions, as well as Texas statutory law. *Dickinson v. State*, 685 S.W.2d 320, 323 (Tex.Crim.App.1984); *Litaker v. State*, 784 S.W.2d 739, 747 (Tex.

App.—San Antonio 1990, pet. ref'd). A comment which refers the jury to a nontestifying defendant's courtroom demeanor may constitute a comment on the defendant's failure to testify. *Dickinson*, 685 S.W.2d at 323. Only if a defendant misbehaves in the courtroom may a prosecutor comment on a defendant's courtroom demeanor. *Dickinson*, 685 S.W.2d at 323.

▇ Appellant did not testify at either stage of trial, and we can find nothing in the record to indicate that appellant conducted herself in some unacceptable manner in the courtroom. In evaluating a prosecutor's argument to determine if it was a comment on the defendant's failure to testify, the language used must be viewed from the jury's standpoint and the test to be employed is whether the language was manifestly intended or characterized in such a way that the jury would naturally and necessarily take it to be a comment on the defendant's failure to testify. *Jones v. State*, 693 S.W.2d 406, 407 (Tex.Crim.App. 1985); *Hinojosa v. State*, 788 S.W.2d 594, 596 (Tex.App.—Corpus Christi 1990, pet. ref'd).

The State argues that the comment was not one which the jury would necessarily understand as a comment on appellant's failure to testify. In *Escort v. State*, 713 S.W.2d 733, 738 (Tex.App.—Corpus Christi 1986, no pet.), we found the argument to be a comment on the defendant's failure to testify when the prosecutor stated, "You're seeing the same lack of remorse in court today that has been in her heart ever since this whole episode with [the victim] began." In *Dickinson*, 685 S.W.2d at 322, the Court of Criminal Appeals found that arguments which directed the jury's attention to a non-testifying defendant's lack of shame or pity constituted comments on failure to testify. *See Bower v. State*, 769 S.W.2d 887, 907 (Tex.Crim.App.1989).

The language here necessarily focused the jury's attention on the appellant's courtroom demeanor, asking the jury to consider that non-testifying demeanor as a circumstance in assessing punishment. The prosecutor, in effect, told the jury that they could consider appellant's passive

courtroom demeanor (i.e., the assertion of her constitutional right not to testify) as evidence that she lacked compassion. In reality, appellant's decision not to testify may have been a tactical decision to avoid the introduction of damaging evidence. By telling the jury that they could assess punishment based on passive courtroom demeanor, the State used appellant's failure to testify as a item to justify a lengthy sentence. We find that the prosecutor's statement was a comment on appellant's failure to testify.

■ The next issue then is whether the comment was invited by defense counsel during his argument. A prosecutor's comment on a defendant's failure to testify is not error if it is invited. *United States v. Robinson*, 485 U.S. 25, 108 S.Ct. 864, 99 L.Ed.2d 23 (1988). The State claims that the theme of appellant's argument asked the jury not to assess punishment at 50 years unless it could determine what kind of person appellant was. The State argues that no one testified to what appellant was like and points out that one of the witnesses was terrified to be in the courtroom with appellant. The State characterizes appellant's argument as a transparent call to consider appellant's demeanor in court when assessing punishment. The State's claim of invited argument requires us to examine appellant's jury argument and the evidence presented at the punishment phase of trial.

At the punishment phase, the State presented no evidence. Appellant called her mother who testified that appellant was a nervous-type person who had gone to a physician for the treatment of her mental problems. Her mother testified that appellant went to the physician in July 1990, the month before the offense occurred. Appellant's counsel mentioned this evidence in his jury argument as "the only evidence you heard during the punishment phase." Counsel asked the jury to decide punishment on the evidence, not on speculation. The evidence presented at the guilt phase of trial showed that appellant was mad or angry immediately after the offense occurred. Counsel asked the jury to figure

out what happened on the night of the offense and then, in that context, to ask what kind of person appellant was. Counsel asked the jury not to make up evidence about appellant.

■ The State argues that defense counsel made a transparent reference to appellant's courtroom demeanor when he asked the jury to consider what kind of person appellant was. We disagree. The evidence showed that appellant was a nervous person who was seeing a doctor for mental problems. Accordingly, there was some evidence about the kind of person appellant was. Furthermore, there was some evidence relating to the events of the offense which, in themselves, might have allowed the jury to infer certain things about the kind of person appellant was. Thus, we do not find that appellant's counsel's argument invited the prosecutor to ask the jury to consider appellant's courtroom demeanor in assessing punishment.

■ When an appellate court determines that the trial court erred in ruling on jury argument, the next step is for the appellate court to determine whether the error was harmless under Tex.R.App.P. 81(b)(2). Under Rule 81(b)(2), error is harmless only if the appellate court finds beyond a reasonable doubt that the error made no contribution to the punishment assessed. We do not find the error harmless. The State asked the jury to assess a fifty year sentence based in part upon the appellant's courtroom demeanor. The trial court, by overruling the objection, permitted the jury to consider her non-testifying demeanor, and the jury assessed the fifty-year sentence requested by the State. When the trial court sustained the objection, it put its stamp of approval on the improper argument, thus magnifying the possibility for harm. *See Good v. State*, 723 S.W.2d 734, 738 (Tex.Crim.App.1986). We cannot say beyond a reasonable doubt that the error had no effect on the punishment assessed when the jury assessed the punishment requested by the State and was authorized by the trial court to rely upon the improper consideration. *See Coyle v. State*, 693 S.W.2d 743, 745 (Tex.

524

App.—Dallas 1985, pet. ref'd). We sustain appellant's third point of error.

In her first point of error, appellant contends that the trial court erred in overruling her objection that the prosecutor's jury argument at the end of the guilt phase was an improper attack on appellant through the court's charge. The following occurred:

MS. SNYDER (the prosecutor): Ladies and gentlemen, there is a paragraph 13 in here that I think is a complete, total insult to everyone in this courtroom, to Kathy's mother, and to Kathy, who was buried in Bishop, Texas, and that is this right to protect your property by use of deadly force. I'm not saying that it's a bad law, ladies and gentlemen, I'm just saying it's an insult that this lady is raising it to you today, and I ask you—

MR. MAY (the defense counsel): Your Honor, I would object, This is in the Court's Charge on the law, not my charge. We object to the State arguing on—in that fashion.

MS. SNYDER: Your Honor, I'm just saying it's an insult.

THE COURT: Objection overruled. Go on.

Shortly thereafter, the prosecutor again focused on the defense.

MS. SNYDER: The State asks you, after you have deliberated on this case, to come back to what we call the verdict forms and have your foreman sign that you find Debra Bowser guilty of murder. And we ask you to sign it in black ink, and if you want, put a circle around it. But let us know that you will not allow someone to come in and misuse defenses like this Defendant has. Thank you.

THE COURT: Mr. May?

MR. MAY: Your Honor, I'll object to the last comment. The Court's charge raises—instructs the jury on defenses as raised by the evidence; that's the Court's Charge and not our charge, and we object to her comment.

THE COURT: Thank you, overruled.

■ Appellant argues that (1) the argument was outside the record because no evidence showed that appellant personally requested the charge, (2) the prosecutor was striking at appellant over counsel's shoulder because counsel rather than appellant requested the charge, and (3) the prosecutor was striking at appellant over the court's shoulder because the court included the defensive charge.

We do not interpret the prosecutor's argument as an attack on the charge, the defense counsel, or the court. Rather, we interpret the argument as an attack on the evidence which would support a claim of defense of property. As such, the prosecutor's comments constitute nothing more than proper argument that the evidence pertaining to the defense was so weak that the jury should reject the defense. Appellant's first point of error is overruled.

In point of error four, appellant contends that the trial court erred in failing to hold a hearing to determine appellant's competency to stand trial. A trial court must hold a hearing to determine whether there is any evidence of incompetency when evidence of incompetency from any source is brought to the trial court's attention. Tex.Code Crim.Proc.Ann. art. 46.02, § 2(b) (Vernon 1979). Appellant points to Dr. Lerma's testimony following the conclusion of the punishment phase to support his claim. Appellant relies on his testimony that appellant was moderately retarded with an IQ of 49 and was functioning below a 3rd grade level. Counsel further stated that he had some difficulty communicating with appellant but believed she understood the proceedings. He further stated that he had talked to her and discussed the case with her but found the discussions less than fruitful in acquiring any information or a consistent story.

A person is incompetent to stand trial when he does not have a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding or does not have a rational as well as factual understanding of the proceedings against him. Tex.Code Crim.Proc. Ann. art. 46.02, § 1(a)(1)–(2) (Vernon 1979).

■ The above statements by counsel and testimony by Dr. Lerma do not show

that appellant could not consult with her attorney or understand the nature of the proceedings. Although counsel spoke of some unspecified difficulty in communicating with his client at some previous time, he did not indicate any present inability to consult with her. Dr. Lerma's testimony does not reveal any fact that appellant had a present inability to communicate with counsel or understand the nature of the proceedings. *See Loftin v. State*, 660 S.W.2d 543, 545–547 (Tex.Crim.App.1983). Appellant's fourth point of error is overruled.

Because we have sustained points of error two and three, the judgment of conviction is reversed, and the cause is remanded to the trial court.