**Lawron COLEMAN, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 10–94–074–CR.**

Court of Appeals of Texas,
Waco.

Jan. 10, 1996.

Order Denying Rehearing Feb. 14, 1996.

Robert J. Reagan, Doyle Ross Jackson, Dallas, for appellant.

John Vance, Criminal District Attorney, Kimberly Schaefer, Asst. District Attorney, Dallas, Robert Huttash, State's Attorney, Austin, for appellee.

Before THOMAS, C.J., and CUMMINGS and VANCE, JJ.

## OPINION

VANCE, Justice.

A jury convicted Lawron Coleman of murder and assessed punishment at twenty-five years in prison. TEX.PENAL CODE ANN. § 19.02 (Vernon 1994). He appeals on six points, asserting that the court erred in quashing the subpoenas of two newspaper reporters, in failing to instruct the jury on extraneous offenses during the punishment phase, and in granting judgment on the verdict because the evidence on punishment is factually insufficient. Because the reporters

failed to demonstrate a basis for quashing the subpoenas, we will reverse the judgment and remand the cause for another trial.

## THE OFFENSE

Coleman is a member of a gang called the Oak Cliff Mafia ("O.C.M."). On Thanksgiving weekend of 1993, Coleman and his brother were walking home when they were approached by a car occupied by members of Los Homeboys ("L.H.B."), a rival gang.[1] His brother was wounded in the drive-by shooting, although Coleman believed the attack was directed at him. A week later, on November 30, Coleman and fellow gang members were driving around when they saw three individuals waiting at a bus stop. Coleman believed that some of the individuals were members of Los Homeboys. The car circled the bus stop once or twice. Coleman raised a shotgun, shouted, "O.C.M., motherf——s," and fired at the three boys. Sixteen-year-old Victor Alvarez was hit in the chest and died from his wounds.

Coleman's written confession was admitted at trial. It states that he was a passenger in the car when one of the other occupants yelled, "There goes L.H.B.s." Coleman stated, "I got angry hearing L.H.B. and my mind just went blank." He testified at trial that he did not intend to kill anyone; rather, he intended to scare the boys and "let them know how it felt to be afraid." Coleman's defensive theory was that he committed voluntary manslaughter, not murder, because he was acting under the sudden passion of his brother's shooting. The court charged the jury on murder and manslaughter. The jury found Coleman guilty of murder.

## QUASHING OF SUBPOENAS

In his first two points, Coleman complains that the court erred in quashing the subpoenas of two newspaper reporters because it based its ruling on a "reporter's privilege" that does not exist and because the action violated his right of compulsory process guaranteed by the federal and state constitutions.

Coleman subpoenaed Nora Lopez and Tracy Everbranch, reporters for *The Dallas Morning News*. The reporters filed a motion to quash the subpoenas, asserting that they believed Coleman was seeking their testimony regarding the "work and fact-finding" they had done on gang violence in Dallas. Lopez had written an article on the rival gangs approximately six weeks after the shooting of Alvarez. Two later articles had been written regarding a co-defendant.

The motion to quash asserted that, under both the federal and state constitutions, the reporters had a qualified privilege protecting information obtained in the course of news-gathering activities. The reporters argued that they could not be compelled to testify unless Coleman made a showing that: 1) the information is highly material or relevant; 2) it is necessary or critical to the case; and 3) he would not be able to make out a defense without the information because it is not available from another source. The reporters further argued that they did not witness the crime, that any information they have is hearsay, and that they are not experts on gang warfare and violence in Dallas. Thus, they argued, Coleman had not met his burden to overcome their privilege not to testify.

Coleman responded that his entire defense centered on his state of mind and that he had subpoenaed the reporters because "they've done an extensive amount of investigative work concerning the two so-called gangs that we have involved in this." He asserted that the reporters had spoken with witnesses and that they "could enlighten this jury as to the atmosphere out there that could relate back to the state of mind of [Coleman], which is a very critical issue in this case." Coleman introduced into evidence the original newspaper article.

The State argued that Coleman was not seeking first-hand knowledge from the reporters. Rather, he was seeking hearsay, after-the-fact evidence acquired by the reporters. The State further argued that Coleman essentially sought "expert testimony,"

---

1. The Junior Homeboys is a gang of younger boys affiliated with Los Homeboys. Witnesses refer to the groups interchangeably.

which the reporters were unwilling to provide, and that the evidence he sought could be gleaned from other available sources.

At the hearing on the motion to quash, the court heard arguments of counsel. The reporters did not testify, nor did they supply affidavits with their motion. The only evidence adduced was the two subpoenas and Lopez' news article. The court granted the motion.

## STANDARD OF REVIEW

■ The court's decision to quash the subpoenas is reviewed for an abuse of discretion. *Drew v. State*, 743 S.W.2d 207, 225 n. 11 (Tex.Crim.App.1987) (citing *United States v. Nixon*, 418 U.S. 683, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974), and *Ross v. Estelle*, 694 F.2d 1008 (5th Cir.1983)).

## REPORTER'S PRIVILEGE

■ In his first point, Coleman complains that the court erred in quashing the subpoenas of the newspaper reporters because there is no "reporter's privilege" in a criminal trial.[2] *Branzburg v. Hayes*, 408 U.S. 665, 690, 92 S.Ct. 2646, 2661, 33 L.Ed.2d 626 (1972); *Ex parte Grothe*, 687 S.W.2d 736, 739 (Tex.Crim.App.1984), *cert. denied*, 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985). The State concedes that there is no special "press privilege" in Texas to excuse members of the media from complying with a subpoena issued in a criminal proceeding. The State also concedes that the reporters had no other competing constitutional right or testimonial privilege which would excuse them from testifying.

■ Subpoenas were properly requested, issued, and served upon the reporters. TEX. CODE CRIM.PROC.ANN. art. 24.03 (Vernon Supp.1995).[3] The reporters' motion to quash asserted a qualified "reporter's privilege" not to testify. Although the Code of Criminal Procedure makes no provision for quashing subpoenas, the Court of Criminal Appeals has implicitly approved the procedure.[4] *See Perez v. State*, 590 S.W.2d 474, 479 (Tex. Crim.App. [Panel Op.] 1979), *cert. denied*, 446 U.S. 937, 100 S.Ct. 2157, 64 L.Ed.2d 790

2. The reporters argued that, because they had asserted their qualified privilege, the burden was on Coleman "to make a clear and specific showing ... that the information sought is: (1) highly material and relevant; (2) necessary or critical to the maintenance of the claim; and (3) not obtainable from other available sources." *Channel Two Television Co. v. Dickerson*, 725 S.W.2d 470, 472 (Tex.App.—Houston [1st Dist.] 1987, orig. proceeding). The majority of the cases cited in the motion to quash are civil actions in which a reporter was asked to disclose a confidential source. In light of *Ex parte Grothe*, 687 S.W.2d 736, 739 (Tex.Crim.App.1984), *cert. denied*, 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985), and *State ex rel. Healey v. McMeans*, 884 S.W.2d 772, 775 (Tex.Crim.App.1994) (orig. proceeding), we do not believe this civil standard applies in a criminal proceeding.

We recognize, however, that some courts have extended the civil balancing test to criminal prosecutions. *Campbell v. Klevenhagen*, 760 F.Supp. 1206, 1213 (S.D.Tex.1991) (disclosure of confidential sources). Other courts have refused to apply a balancing test in criminal cases. *Karem v. Priest*, 744 F.Supp. 136, 142 (W.D.Tex.1990).

3. Unlike many of the reported cases, this case does not involve a question of the court denying the issuance of a subpoena, denying a writ of attachment for a witness who failed to appear, or denying an application to subpoena an out-of-state witness. *E.g., Weaver v. State*, 657 S.W.2d 148, 150–51 (Tex.Crim.App.1983) (denial of application for out-of-state witness); *Rodriguez v. State*, 513 S.W.2d 22, 27–28 (Tex.Crim.App.1974) (denial of writ of attachment); *Hardin v. State*, 471 S.W.2d 60, 62 (Tex.Crim.App.1971) (denial of "bench warrant"); *see also* TEX.CODE CRIM.PROC. ANN. arts. 24.11, 24.12, 24.28 (Vernon 1989). *Issuance* of a subpoena upon a filing of an application meeting the requirements of the Code of Criminal Procedure is "a matter of right." 41 GEORGE E. DIX & ROBERT O. DAWSON, CRIMINAL PRACTICE AND PROCEDURE § 27.53 (Texas Practice 1995).

4. In *Perez*, the defendant was charged with tampering with government records. *Perez v. State*, 590 S.W.2d 474, 476 (Tex.Crim.App. [Panel Op.] 1979), *cert. denied*, 446 U.S. 937, 100 S.Ct. 2157, 64 L.Ed.2d 790 (1980). He subpoenaed Attorney General John Hill and Comptroller Bob Bullock to testify at his trial and to produce documents. The state officials filed motions to quash and attached their affidavits stating that they had no personal knowledge of facts material to the case. *Id.* at 479. The affidavits acknowledged that they had documents within their possession which would be made available to Perez. The Court observed: "Upon demand by the court at the hearing on the motion to quash, [Perez] was unable to show what Hill and Bullock would testify to that would be material to her defense." *Id.* Without any evidence that the witnesses would have been material to Perez' case, the Court found no error in the trial court's refusal to require Hill and Bullock to personally attend the trial. *Id.*

(1980). Thus, a motion to quash is a proper vehicle for a witness to assert, for example, his Fifth Amendment right against self-incrimination. *Castillo v. State,* 901 S.W.2d 550, 552 (Tex.App.—El Paso 1995, pet. ref'd).

The Court of Criminal Appeals has recently addressed the question of a reporter's privilege in *State ex rel. Healey v. McMeans,* 884 S.W.2d 772 (Tex.Crim.App.1994) (orig. proceeding). In *McMeans,* the state subpoenaed four newsman to appear and give evidence in an "abuse of corpse" proceeding. The newsman filed motions to quash based on a qualified privilege under the federal and state constitutions. *Id.* at 774. At the hearing on the motion to quash, the assistant district attorney testified that he believed the newsman had heard and videotaped the defendant making incriminating statements regarding the alleged offense. *Id.* The Court, in rejecting a First Amendment "reporter's privilege" in criminal prosecutions, held: "[N]ewsmen have no constitutional privilege, qualified or otherwise, to withhold evidence relevant to a pending criminal prosecution." *Id.* at 775.

## COMPULSORY PROCESS

■ Coleman's second point asserts that he was denied his fundamental right of compulsory process. An accused has the right of compulsory process for obtaining witnesses on his behalf. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; TEX.CODE CRIM.PROC. ANN. art. 1.05 (Vernon 1977); *Rodriguez v. State,* 513 S.W.2d 22, 27 (Tex.Crim.App. 1974). Coleman argues that he simply needed to follow the proper procedures for application, issuance, and execution of the subpoenas. The State asserts, and we agree, that the Sixth Amendment right to compulsory process is not absolute or inviolate. It further asserts that a court is not required to compel irrelevant or inadmissible testimony.

■ The Sixth Amendment confers upon a criminal defendant the right "to be confronted with the witnesses against him [and] to have compulsory process for obtain-

ing witnesses in his favor. . . ." U.S. CONST. amend. VI. "It is the manifest duty of the courts to vindicate those guarantees, and to accomplish that it is essential that all relevant and admissible evidence be produced." *United States v. Nixon,* 418 U.S. 683, 711, 94 S.Ct. 3090, 3109, 41 L.Ed.2d 1039 (1974).[5]

The fundamental importance of the right to compulsory process is discussed in *Washington v. Texas,* 388 U.S. 14, 19, 87 S.Ct. 1920, 1923, 18 L.Ed.2d 1019 (1967):

The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

In *Washington,* a state procedural statute provided that persons charged as principals, accomplices, or accessories in the same crime could not be witnesses for each other. *Id.* at 15, 87 S.Ct. at 1921. Washington was not denied his co-participant's testimony because the State refused to compel his attendance; rather, Texas' statute made the co-participant's testimony inadmissible whether he was present in the courtroom or not. *Id.* at 19, 87 S.Ct. at 1923. The Court held that Washington's right to compulsory process was denied when "the State arbitrarily denied him the right to put on the stand a witness who was physically and mentally capable of testifying to events that he had personally observed, and whose testimony would have been relevant and material to the defense." *Id.* 388 U.S. at 23, 87 S.Ct. at 1925 (Court stated that is was "undisputed" that the co-participant's testimony was "relevant," "material," and "vital" to the defense).

5. The State points out that, although Coleman cites Article I, section 10, of the Texas Constitution, he does not argue the state grounds separately or argue that the Texas Constitution offers him more protection than the federal constitution. Thus, we will address only Coleman's federal claims. *Muniz v. State,* 851 S.W.2d 238, 251–52 (Tex.Crim.App.), *cert. denied,* —— U.S. ——, 114 S.Ct. 116, 126 L.Ed.2d 82 (1993).

■ The right to compulsory process is not absolute, however, particularly in the context of a competing constitutional right or testimonial privilege. Thus, a defendant is not denied the right to compulsory process when a witness refuses to testify, asserting a Fifth Amendment right against self-incrimination. *United States v. Khan,* 728 F.2d 676, 678 (5th Cir.1984). The right to compulsory process may also yield to lawyer-client, husband-wife, or other privileges. *Washington,* 388 U.S. at 23 n. 21, 87 S.Ct. at 1925 n. 21.

In other instances, a balancing of interests is required. In *United States v. Valenzuela–Bernal,* the United States Supreme Court addressed the Sixth Amendment right to compulsory process in the context of balancing the conflicting duties of the Executive Branch. 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982). Valenzuela–Bernal was apprehended while transporting several illegal aliens. He was indicted for transporting one passenger, Romero–Morales, in violation of federal law. An assistant attorney general concluded that the other illegal-alien passengers possessed no evidence material to the prosecution or defense, and they were deported to Mexico prior to trial. Valenzuela–Bernal asked the trial court to dismiss the indictment, claiming that the deportation of the two passengers violated his Fifth Amendment right to due process and his Sixth Amendment right to compulsory process for obtaining favorable witnesses. *Id.* at 861, 102 S.Ct. at 3443.

In determining whether Valenzuela–Bernal's right to compulsory process had been denied by the government's deportation of potential witnesses, the Court discussed the conflicting duties of the Executive Branch—to regulate immigration and to prosecute criminal charges. The Court stated:

> The only recent decision of this Court dealing with the right to compulsory process guaranteed by the Sixth Amendment suggests that more than the mere absence of testimony is necessary to establish a violation of the right. See *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967). Indeed, the Sixth Amendment does not by its terms grant to a criminal defendant the right to secure the attendance and testimony of any and all witnesses: it guarantees him "compulsory process for obtaining *witnesses in his favor.*" U.S. Const., Amdt. 6 (emphasis added). In *Washington,* this Court found a violation of this Clause of the Sixth Amendment when the defendant was arbitrarily deprived of "testimony [that] would have been *relevant* and *material,* and ... *vital* to the defense." 388 U.S., at 16, 87 S.Ct., at 1922 (emphasis added). This language suggests that respondent cannot establish a violation of his constitutional right to compulsory process merely by showing that deportation of the passengers deprived him of their testimony. He must at least make some plausible showing of how their testimony would have been both material and favorable to his defense.

(Footnote omitted). *Id.* 458 U.S. at 867, 102 S.Ct. at 3446.

## MATERIALITY, RELEVANCE AND FAVORABLENESS

The final question is: Did Coleman have to make a showing that the reporters' testimony would have been material and favorable to his defense?

In *Valenzuela–Bernal,* the Court held that mere deportation of witnesses, without a showing that the lost evidence would be "both material and favorable to the defense," was not sufficient to establish a violation of the Compulsory Process Clause of the Sixth Amendment. However, the Court added a footnote: "In adopting this standard, we express no opinion on the showing which a criminal defendant must make in order to obtain compulsory process for securing the attendance at his criminal trial of witnesses within the United States." *Id.* at 873 n. 9, 102 S.Ct. at 3449 n. 9.

In *Washington,* the question was not addressed because it was "undisputed" that the co-participant's testimony was "relevant," "material," and "vital" to the defense. 388 U.S. at 16, 87 S.Ct. at 1922.

The State cites *Hardin v. State,* 471 S.W.2d 60 (Tex.Crim.App.1971), for the proposition that Coleman had the burden of proving materiality. In *Hardin,* the defendant sought bench warrants of alibi witnesses

three days before trial. The court stated that "materiality of a witness' testimony is the touchstone for determining whether reversible error was committed in denying compulsory process." *Id.* at 62. The court, however, limited its ruling to certain situations: "Where a defendant seeks compulsory process for a witness to appear in his defense which results in a continuance, an attachment, or a bench warrant the court is within its rights to demand sufficient appearance of the materiality of the witness' testimony." *Id.*

Compelling process of an out-of-state witness also requires a showing that the witness is material and necessary. TEX.CODE CRIM. PROC.ANN. art. 24.28, § 3(b) (Vernon 1989); *Weaver v. State,* 657 S.W.2d 148, 150–51 (Tex.Crim.App.1983) (denial of application for out-of-state witnesses does not violate compulsory process when materiality of testimony not shown).

The El Paso Court of Appeals has recently addressed compulsory process in *Castillo v. State,* 901 S.W.2d 550 (Tex.App.—El Paso 1995, pet. ref'd), a direct appeal after conviction. Castillo subpoenaed a former police officer who, at the time of trial, was herself facing criminal charges in federal court. The officer's attorney moved to quash the subpoena, asserting his client's Fifth Amendment right against self-incrimination. The court quashed the subpoena.

The El Paso court cited two reasons for overruling Castillo's point that the court's quashing of the subpoena denied him his right to compulsory process. *Id.* at 553. First, the court noted that the officer's Fifth Amendment rights overrode Castillo's right to compulsory process. Second, the court found that Castillo had "failed to demonstrate that [the officer's] testimony was material and necessary to his defense." *Id.* The court cited *Washington* and *Hardin* for the proposition that the defendant has the burden of showing that "the testimony for which defendant seeks compulsory process is

material and necessary to his defense." *Id.* The court determined that Castillo's attorney's assertions that the officer was a "prime player" in the investigation "failed to show what [the officer's] testimony would actually be." When the State asserted that the officer had neither participated in the events nor had any relevant evidence, defense counsel replied, "That's what we don't know." The court determined that Castillo had not proven what the officer's testimony would have been or how the testimony would have been material to his defense. *Id.*

■■■■ When must a defendant show materiality and necessity? We believe that the cases can be reconciled. First, when a defendant has obtained a subpoena and the evidence adduced at a hearing on a motion to quash establishes a competing interest—such as Fifth Amendment rights—which overrides the defendant's right to compulsory process, the defendant cannot overcome the greater right no matter how material or necessary the evidence sought. Second, when a defendant has obtained a subpoena and the evidence in support of a motion to quash establishes a competing interest—such as enforcement of immigration laws—which must be balanced against the defendant's right to compulsory process, the defendant bears the burden of showing that the materiality of the evidence is such that his need outweighs the competing right. Third, when a defendant must apply for a subpoena for a witness not available through ordinary process within the jurisdiction, such as to compel attendance of an out-of-state witness or to obtain a bench warrant for an incarcerated witness, he bears the burden of showing that the evidence sought is material to the case. Finally when, as here, the defendant has obtained a subpoena, he has no burden—the burden of showing a basis to quash that subpoena is on the movant.[6]

## SUMMARY

This is not a First Amendment case. Nor is it a case where a testimonial privilege was

---

6. One of the requirements for obtaining a subpoena is that the defendant or his attorney must make a written, sworn application to the clerk for each witness desired. TEX.CODE CRIM.PROC.ANN. art. 24.03(a) (Vernon Supp.1995). The sworn application must state "that the testimony of said

witness is material to ... the defense." *Id.* Thus, at the time the subpoena is issued, the applicant has made a prima facie showing of materiality. *See* 41 GEORGE E. DIX & ROBERT O. DAWSON, CRIMINAL PRACTICE AND PROCEDURE § 27.53.

asserted that overrides the right to compulsory process or that must be balanced against the defendant's right to process. Coleman obtained subpoenas for witnesses by ordinary means. TEX.CODE CRIM.PROC. ANN. art. 1.05 (Vernon 1977), arts. 24.01, 24.03 (Vernon 1989 & Supp.1995). Having been presented with no evidence that would justify a denial of Coleman's "constitutionally guaranteed access to evidence,"[7] the court abused its discretion when it quashed the subpoenas.

We do not say that the evidence in question will be admissible at another trial. The question of admissibility was not reached by the court, and we do not address it here. These witnesses moved to quash the subpoenas solely on the ground that they, as reporters, were privileged not to testify. They offered no testimony, either live or in the form of affidavits, at the hearing on the motion to quash. All we are saying is that, in the context of a motion to quash, the reporters failed to meet their burden of showing any basis to quash the subpoenas.

We sustain points of error one and two.

## HARM

█ Having determined that the court erred in quashing the subpoenas, we must determine whether the error is subject to a harm analysis. TEX.R.APP.P. 81(b)(2).

We are aware that courts have applied a harm analysis when the trial court erroneously denied a writ of attachment when a subpoenaed witnesses failed to appear. *Erwin v. State*, 729 S.W.2d 709, 714 (Tex.Crim. App.1987) (plurality); *Willis v. State*, 626 S.W.2d 500, 503 (Tex.Crim.App. [Panel Op.] 1979); *Rodriguez v. State*, 513 S.W.2d 22, 27–28 (Tex.Crim.App.1974); *Bowser v. State*, 816 S.W.2d 518, 520–21 (Tex.App.—Corpus Christi 1991, no pet.). In these instances, the defendant has been required to meet a three-pronged test to preserve error. *Erwin*, 729 S.W.2d at 714. First, he must request attachment and be denied relief. Second, he must show what the witness would have testified to. Third, the testimony

the missing witness would have given must be relevant and material. *Id.* (citing *Rodriguez*, 513 S.W.2d at 28; *Brito v. State*, 459 S.W.2d 834, 837 (Tex.Crim.App.1970)). If all three prongs are met, "reversible error will result 'unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.'" *Id.* (citing TEX.R.APP.P. 81(b)(2)).

We do not believe a harm analysis is appropriate in this instance. The court's error in granting the motion to quash denied Coleman's right to compulsory process—a constitutionally-based right which has also been implemented by statute. We believe that any attempt to analyze harm on the basis of the appellate record before us "defies empirical examination." *Marin v. State*, 851 S.W.2d 275, 282 (Tex.Crim.App.1993); *Kieschnick v. State*, 911 S.W.2d 156, 161 (Tex.App.—Waco, 1995) (on rehearing). We note that, because the trial court quashed the subpoenas on the basis of the reporter's privilege, Coleman could not provide their testimony in a bill of exception. TEX.R.CRIM. EVID. 103(a)(2). Thus, the record does not contain "concrete data" from which we can meaningfully gauge or quantify the effect of the error. *Marin*, 851 S.W.2d at 282.

## CONCLUSION

Having sustained Coleman's assertions that the court erred in quashing the subpoenas of the reporters and finding that no harm analysis is required, we do not reach Coleman's remaining points. We reverse the judgment and remand the cause to the trial court for a new trial.

## OPINION ON REHEARING

VANCE, Justice.

On original submission, we held that the court erred in quashing the subpoenas of two newspaper reporters based on their assertion of a "reporter's privilege." *Coleman v. State*, 915 S.W.2d 80, 84 (Tex.App.—Waco 1996). As the State conceded, the privilege does not exist in a criminal trial. *Ex parte Grothe*,

---

**7.** *United States v. Valenzuela–Bernal*, 458 U.S. 858, 867, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982).

687 S.W.2d 736, 739 (Tex.Crim.App.1984), *cert. denied,* 474 U.S. 944, 106 S.Ct. 308, 88 L.Ed.2d 286 (1985).

We also held that the burden at the hearing on the motion to quash was on the reporters. *Coleman,* 915 S.W.2d at 86. The reporters did not testify at the hearing nor did they attach their affidavits to the motion. Coleman made a prima facie showing of materiality by his sworn applications for the subpoenas. TEX.CODE CRIM.PROC.ANN. art. 24.03(a) (Vernon Supp. 1996); *see* 41 GEORGE E. DIX & ROBERT O. DAWSON, CRIMINAL PRACTICE AND PROCEDURE § 27.53 (Texas Practice 1995). Under these facts, where the reporters neither raised a privilege nor presented any evidence to contradict Coleman's prima facie showing of materiality, the court erred in quashing the subpoenas, and Coleman was denied his right to compulsory process.

The State's Motion for Rehearing is denied.

THOMAS, C.J., not participating.